Charles LINDGREN, Petitioner–Appellant,

v.

Michael P. LANE, Respondent–Appellee.

No. 89–2071.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1990.

Decided Feb. 15, 1991.

---

Charles Lindgren, Hillsboro, pro se.

Jonathan Young, law student, Thomas F. Geraghty, Northwestern University Legal Clinic, Chicago, for petitioner-appellant.

Nathan P. Maddox, Asst. Atty. Gen., Office of Atty. Gen., Crim. Appeals Div., Springfield, for respondent-appellee.

Before CUMMINGS, EASTERBROOK and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner appeals the denial of a writ of habeas corpus by the district court for alleged constitutional violations resulting from his trial for murder and armed robbery.[1] In 1981, petitioner Charles Lindgren was convicted of murder, armed robbery and robbery after a jury trial in Macoupin County, Illinois. He was sentenced to concurrent terms of 25 to 75 years for armed robbery and 85 to 135 years for murder. For reasons unspecified on the record, petitioner's robbery conviction was vacated.

Petitioner appealed to the Appellate Court of Illinois which affirmed the conviction. *People v. Lindgren*, 111 Ill.App.3d 112, 67 Ill.Dec. 5, 443 N.E.2d 1129 (4th Dist.1982), and the Illinois Supreme Court denied a petition for leave to appeal. Subsequently the Circuit Court of Macoupin County dismissed Lindgren's post-conviction petition. This decision was affirmed by the Fourth District of the Appellate Court of Illinois, 144 Ill.App.3d 1186, 110 Ill.Dec. 305, 510 N.E.2d 1336 (1986). No petition for leave to appeal to the Supreme Court of Illinois was filed.

Lindgren then filed a petition for writ of habeas corpus in the District Court for the Southern District of Illinois. By consent of the parties, the matter was referred to Magistrate Gerald Cohn, who handed down a 17–page opinion denying the petition (App. 1–17).

The gravamen of the appeal falls into two categories. First, petitioner claims that the prosecutor violated petitioner's Fourteenth Amendment due process rights in violation of *Doyle v. Ohio*, 426 U.S. 610,

---

1. Petitioner initially was tried and convicted in 1977 for the same crimes, but his conviction was reversed on appeal due to the admission of irrelevant and unduly prejudicial evidence.

96 S.Ct. 2240, 49 L.Ed.2d 91, and *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, on the ground that the State improperly elicited evidence of his post-*Miranda* [2] silence and request for counsel through the testimony of the arresting police officer. Second, petitioner accuses the State of prosecutorial misconduct resulting from the prosecutor's reference to the testimony of a key witness as "undisputed." Petitioner asserts that this characterization placed undue emphasis on the defendant's decision not to testify. Petitioner's other allegation of prosecutorial misconduct centers on the prosecutor's disparaging reference to the defense counsel's closing argument as containing tricks and illusions in an effort to argue the defense's lack of credibility to the jury.

*Facts*

According to the testimony of petitioner's girlfriend, Ina Lewis, at 2:30 A.M. on April 18, 1977, petitioner arrived at the home of Lewis' mother in Virden, Illinois, and told Lewis that he had just killed her paternal grandfather, Arthur Lewis. She then accompanied petitioner to the decedent's house in Girard, Illinois. While riding in petitioner's car, Lewis noticed a tire tool on the seat of petitioner's car and placed it on the floorboard. She also noticed that his shirt and gloves had blood on them. When they arrived at Arthur Lewis' residence, petitioner unsuccessfully searched for a large sum of money supposedly kept by her grandfather. While there she viewed the mutilated body of her grandfather. Petitioner kicked the deceased in the ribs, causing the body to jump, and made a crude remark about amputating his genitalia.

Ina Lewis and petitioner then left her grandfather's house to return to her mother's home, and during the trip petitioner told Ina not to say anything and not to turn on the lights in her mother's home. En route they became stuck in a ditch and eventually got a ride to her mother's home. After their arrival there, Ina's mother drove them to 995 North Grove Street in Virden, where Ina's maternal grandmother

resided and where Ina and petitioner periodically stayed. In a bedroom there, petitioner produced the victim's wallet containing almost $400. Petitioner told Ina that he had gone to the Lewis house for money. When the decedent ordered the petitioner to leave, Lindgren struck the deceased with a tire tool that he was carrying. At the maternal grandmother's house, Lindgren stripped and had Ina burn his clothes and the wallet, and he told her to wash their shoes, which she did.

The next morning the three of them returned to Lindgren's car. While they were waiting for the tow truck, petitioner removed something from the passenger side of his car and walked a short distance down the nearby railroad track. When Ina saw Lindgren, he was returning from the railroad track; he told her to "be cool" and handed her a gun, wallet and keys. She put the first two items under her mother's car seat. The police then arrived and arrested both petitioner and his girlfriend for murder, armed robbery and robbery.

Ina Lewis' testimony was corroborated through the testimony of a pathologist, by scientific analysis, and by the presence of physical evidence. Petitioner also wrote a letter to witness Joann Branson asking her to give him and Ina an alibi. During her incarceration, Ina supposedly told a cellmate, Cheryl Howell, that she had committed the murder and was blaming it on petitioner. Ina denied this, but she pled guilty to obstructing justice and received a sentence of three years' probation.

*References to Lindgren's post-arrest silence*

Petitioner contends that his trial record contains unconstitutional references to his post-arrest silence in violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. The first passage on which the petitioner relies contained the following exchange:

Ms. BRUNTON: Q Did you ask Mr. Lindgren any questions?

A [Trooper Koval] Not at that time.

---

**2.** See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Q Did he make any statement to you after being advised of his Miranda Warnings?

A Yes.

Q What was that?

A He said, you know what's this all about. What's going on.

Q Okay, what occurred next?

A I advised him that there had been a homicide in Girard and that he was wanted in questioning.

Q Did you advise him who the victim was in that homicide?

A No, ma'am, I didn't know at that time.

Q All right, what occurred then?

A Well, he said I don't know anything about it. I've been fishing all night.

Trial Proceedings of 1–20–81, Tr. 134–135. Even a cursory examination of this passage shows that it contains no reference to any post-arrest silence of Lindgren, and indeed his counsel did not even object to the testimony at trial. This excerpt from the transcript illustrates petitioner's attempt to establish an alibi—that on the night of Arthur Lewis' death, he had been fishing at Otter Lake with Ina Lewis.

The petitioner relies on one other passage from the record to show a violation of *Doyle*:

Ms. BRUNTON: Q Did Mr. Lindgren indicate anything to you at that time?

A [Agent Rushing] He indicated that he understood those [*Miranda*] rights.

Q Did he say anything to you subsequently?

A He stated that he had been out fishing all night, that he had purchased a fishing license from the Otter Lake concession stand and at that point he didn't wish to say any more.

Trial Proceedings of 1–21–81, Tr. 104–105. Again Lindgren was referring to his Otter Lake fishing alibi. At the end of the quotation, he indicated that "he didn't wish to say any more," but there was no *Doyle* violation and an objection by defense counsel at the time was properly overruled since the prosecutor never used that testimony against Lindgren. As explained in *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97

L.Ed.2d 618, it is the use of an accused's silence against him at trial by way of specific inquiry or impeachment that forms the basis for a violation of the Fourteenth Amendment.

At trial the prosecutor never called attention to the petitioner's silence. The defendant simply responded that he didn't "wish to say any more" at the tail end of a compound answer to a question by the police officer. Consequently, no *Doyle* violation occurred. Petitioner has uncovered no case holding that a mere transcript witness' reference to defendant's silence breaches the Fourteenth Amendment, nor have we discovered any such authority. Since Lindgren's "postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any reasonable inference," no *Doyle* violation occurred. *Greer v. Miller*, 483 U.S. at 764–765, 107 S.Ct. at 3108.

*Reference to Lindgren's request for counsel*

■ The petitioner argues also that the rule of *Doyle* as extended in *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, was violated when the prosecutor elicited testimony at trial concerning the petitioner's post-arrest request for counsel. The first of these exchanges occurred during the State's direct examination of one of the investigating officers:

[Prosecutor Ms. Brunton]

Q. Was anything else done with the Defendant in your presence while he was in the Girard Police Station?

[Trooper Koval]

A. [1] He was again read his rights by Detective Rushing, [2] said I don't know anything about what's going on. [3] I was fishing all night, and [4] *I'd like to talk to a lawyer.*

Q. Prior to the time that he indicated to you and to Officer Rushing that he wanted to talk to an attorney, did he say anything else about fishing?

MR. RAY: Your Honor, I object to that particular question and would like to approach the bench at this time.

Trial Proceedings of 1–20–81, Tr. 137; emphasis supplied.

The evidence disclosed that petitioner and Ina had been fishing at Otter Lake west of Girard, Illinois, until 8:30 or 9 P.M. on April 17, when they parted, whereas Mr. Lewis was killed between 1 and 5 A.M. on April 18. Rather than emphasizing petitioner's request to talk to a lawyer, Ms. Brunton, the prosecutor, tried to get the trooper to talk further about petitioner's fishing alibi, but she received a four-part answer to her initial question. Defense counsel objected only to her second question and asked for a mistrial. Thereupon Ms. Brunton explained to the judge that she was not trying to elicit the fact that petitioner wanted to talk to an attorney but was trying to probe the fishing alibi. When a mistrial was denied, she asked the trooper whether petitioner made any other statement about fishing, receiving the following reply:

Just that he had been fishing, been bank fishing, that he had bought a license at Sunset Lake a day or so before that.

Trial Proceedings of 1–20–81, Tr. 139.

On its face, it is undeniable that Officer Koval's testimony revealed that petitioner had been given his *Miranda* warnings and that he had indicated his desire to consult counsel. However, *Doyle* and the cases applying the rule against using a defendant's post-arrest silence against him center the constitutional inquiry around the particular use to which the post-arrest silence is being put. In other words, we must look at the circumstances in which a criminal defendant's post-arrest silence or request for counsel is revealed in court in order to determine whether the purposes underlying the rule in *Doyle* have been undermined.

These purposes have been reiterated time and again by this Court, most recently in *Thomas v. Indiana*, 910 F.2d 1413 (7th Cir.1990): "*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), holds that it is a denial of due process to use a defendant's refusal to talk or request for an attorney, after being given the *Miranda* warnings, in evidence against him, even if just to impeach his testimony." *Id.* at 1414. The rule prevents prosecutors from introducing evidence of a defendant's post-arrest silence because permitting such evidence to come before a jury would serve only to undermine the exercise of a constitutional right.

*Doyle* does not impose a prima facie bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor. Here the inadvertent mention of petitioner's request for counsel was not argued to the jury nor was it ever used to impeach petitioner. Since this request for counsel was not used against petitioner, *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, was not contravened. In that case, the prosecutor's closing argument suggested that Greenfield's twice refusing counsel during his statement to police officers showed that his claim of insanity was a sham. According to the Supreme Court, "What * * * [was] impermissible * * * [was] the *evidentiary use* of an individual's exercise of his constitutional rights [to consult counsel] after the State's assurance that the invocation of those rights * * * [would] not be penalized," 474 U.S. at 295, 106 S.Ct. at 640 (emphasis supplied). No such use of the defendant's statement occurred here,[3] so that the *Greenfield* rule is inapplicable. 474 U.S. at 295, 106 S.Ct. at 640.

Petitioner places further reliance on *Sulie v. Duckworth*, 864 F.2d 1348, 1350 (7th Cir.1988), certiorari denied, —— U.S. ——, 110 S.Ct. 93, 107 L.Ed.2d 58, arguing its factual similarity to the case at hand be-

---

**3.** Similarly, the use of the request for counsel was condemned in the request for counsel cases relied upon by petitioner. See *Sulie v. Duckworth*, 864 F.2d 1348 (7th Cir.1988), certiorari denied, —— U.S. ——, 110 S.Ct. 93, 107 L.Ed.2d 58; *Jacks v. Duckworth*, 857 F.2d 394 (7th Cir. 1988), certiorari denied, 489 U.S. 1017, 109 S.Ct. 1133, 103 L.Ed.2d 195; *Fencl v. Abrahamson*, 841 F.2d 760 (7th Cir.1988); *United States ex rel. Savory v. Lane*, 832 F.2d 1011 (7th Cir.1987); *United States v. Shue*, 766 F.2d 1122 (7th Cir. 1985), certiorari denied, *Shue v. United States*, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376.

cause the *Doyle* violation involved only one question and answer. This Court agrees that the prosecutor, in order to violate the constitutional rights of a criminal defendant, need not engage in multiple violations. One violation is enough, but in order for there to be any violation at all, a court must look to the circumstances in which the exchange in question occurred.

In *Sulie,* we found that the state prosecutor elicited testimony from the arresting officer that Sulie had requested an attorney after being given his *Miranda* warnings by asking the arresting officer "Did he [defendant] ask to contact an attorney?" and receiving an affirmative answer. Furthermore, the state found that the prosecutor's purpose in eliciting the request for counsel was to impeach the defendant's evidence of insanity. This the prosecutors cannot do, in light of the Supreme Court's decision in *Greenfield* preventing the use of a defendant's request for counsel as a means of overcoming the insanity defense. *Sulie* does not apply to this case because no comparable incident occurred here. The defendant made no claim to an insanity defense, nor did the prosecutor refer to the defendant's request for counsel as a means of impeaching him. This conclusion in no way narrows *Sulie,* which continues to caution prosecutors never to ask such a question at trial after an accused has been informed of his *Miranda* rights.

Because of our conclusion that petitioner's due process rights were not violated under the Supreme Court's decisions in *Greenfield* and *Doyle,* it is unnecessary to consider the state's contention that any error was harmless beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

*Alleged prosecutorial misconduct*

■ Petitioner's final argument is that prosecutorial misconduct requires reversal. We disagree. He contends that the prosecutor should not have referred to Ina Lewis' testimony as undisputed nor should she have characterized petitioner's defense as tricks and illusions. In closing, the prosecutor referred to the discrepancy between the testimony of Cheryl Howell and that of Ina Lewis in an effort to convince the jury to disbelieve Cheryl Howell's testimony that Ina Lewis in fact admitted to murdering her grandfather:

> The question is do you believe everything that has been presented here? Do you disbelieve the testimony of Ina Lewis and believe solely the testimony of Cheryl Howell? I would submit that the testimony of Ina Lewis has been undisputed.

Trial Proceedings of 1–29–81, Tr. 96–97. However, as the magistrate found, it is apparent that the prosecutor "used the word 'undisputed' in the context of discrediting defense witness Cheryl Howell's testimony and not as an improper reference to petitioner's failure to take the stand." App. 8. Similarly, the Appellate Court of Illinois described the above passage as follows:

> While the credibility of Ina Lewis is subject to debate, the only evidence which can be said to dispute her testimony is that of Cheryl Howell. A fair reading of the prosecutor's rebuttal argument reveals that she was simply trying to point out this fact to the jury and to argue that the testimony of Cheryl Howell was not worthy of belief. This being the case, the testimony of Ina Lewis could properly be characterized as undisputed.
>
> Also, since it was the credibility of Cheryl Howell and not the defendant which was pitted against that of Ina Lewis, the prosecutor's rebuttal cannot be construed as referring to the defendant's failure to take the stand. *People v. Lindgren,* 111 Ill.App.3d 112, 122, 67 Ill.Dec. 5, 443 N.E.2d 1129 (4th Dist. 1982).

Petitioner cites in support of his claim of prosecutorial misconduct our decision in *United States v. Buege,* 578 F.2d 187 (7th Cir.1978), certiorari denied, *Buege v. United States,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183. This case is distinguishable. In *Buege* we concluded that:

> Indirect comments such as the prosecutor's references in this case to "uncontradicted testimony" constitute error when

the statements are "manifestly intended to be or [are] of such a character that the jury [will] naturally and necessarily take [them] to be comment on the defendant's failure to testify."

*Id.* at 188, quoting *United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.), certiorari denied, *Lysczyk v. United States,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117.

In *Buege,* this Court concluded that the prosecutor's repeated references to the uncontradicted testimony presented by the state were improper, because at least some portion of that testimony could only have been disputed by the defendant, and the prosecutor's statement focused unnecessary attention on the defendant's failure to testify in that case. *Id.* at 188–189. This Court has not yet established a *per se* rule construing as improper any prosecutorial reference to testimony as undisputed where the defendant does not testify. Consequently we must look at the circumstances surrounding the prosecutor's comment in this case to determine its propriety.

First, Lindgren's trial counsel did not object to the "undisputed" comment at trial. Moreover, as the magistrate and the Illinois state appellate court found, the prosecutor made the comment while specifically discussing Cheryl Howell's testimony. Therefore, the prosecutor's characterization of Lewis' testimony as "undisputed" referred not to the defendant's failure to testify, but rather expressed the state's belief that Lewis' testimony was simply more credible than Howell's and should be believed. See *Kurina v. Thieret,* 853 F.2d 1409, 1416 (7th Cir.1988), certiorari denied, *Kurina v. Haws,* 489 U.S. 1085, 109 S.Ct. 1544, 103 L.Ed.2d 848 ("We have never held that references to uncontroverted evidence which could have been controverted by someone other than the defendant will constitute reversible error.").

■ Petitioner also argues that it was error for the prosecutor in closing argument to claim that the defense counsel's theory was rife with contradictions and that the defense lawyer pulled out "these inconsistencies like a magician pulls rabbits out of his hats," such that he was trying to "trick" the jury by presenting "illusions." Trial Proceedings of 1–29–81, Tr. 90. To determine whether the statement by the prosecutor amounted to a constitutional infraction, the test is whether the "statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment." *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir.1976), certiorari denied, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781. The single reference to the defense counsel's closing argument as tricks and illusions was certainly not so "inflammatory and prejudicial" that petitioner was deprived of his liberty without due process of law. Again, the petitioner asks us to find a constitutional violation on the basis of one reference by the prosecutor. This time the prosecutor's statement pointed out the State's belief that the petitioner's arguments were unsubstantiated by evidence or were contradicted by the proof presented by the State. We have previously stated that:

> Characterization of a defense as fabricated, standing alone, is no more improper than characterizing a witness as a liar. * * * But where the terms "fabricated" or "lies" are used repeatedly to the point of excessiveness, the line between the "undignified and intemperate" * * * and the hard or harsh but fair may be crossed with a resultant impairment of "the calm and detached search for truth to which a criminal trial should aspire."

*United States v. Craig,* 573 F.2d 455, 494 (7th Cir.1977), certiorari denied, *North v. United States,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (citations omitted). *Craig* is instructive here, for one suggestion by the State that the defense counsel may in some way be trying to trick the jury does not give rise to prosecutorial misconduct.

Even though the above statements by the prosecutor do not constitute prosecutorial misconduct sufficient to warrant issuance of the writ of habeas corpus, this Court in no way encourages the State to come as close to the line of prosecutorial misconduct as it can without crossing it. A

single reference by the prosecutor to testimony as "undisputed" or to the defense theory as an illusion may indeed require this Court to find harmful error if the prosecutorial trial tactic undercuts the defendant's Fifth Amendment right to remain silent or the court's obligation to ensure that a defense lawyer may provide vigorous representation to his client without being undermined or attacked by the accusations of the prosecutor.

Here there was no unconstitutional prosecutorial misconduct in the discrete references brought to our attention by the petitioner. In the absence of either a *Doyle* or *Greenfield* violation or of prosecutorial misconduct, the district court's denial of the writ of habeas corpus is affirmed.