991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby SIZEMORE and Larry Sizemore, Defendants-Appellants.
 Nos. 92-5488, 92-5489.
 United States Court of Appeals, Sixth Circuit.
 April 16, 1993.
 
 Before KENNEDY and MILBURN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Bobby Sizemore and Larry Sizemore, who are brothers, appeal their jury convictions for manufacturing marijuana, possessing with intent to distribute marijuana, conspiracy, and aiding and abetting. Defendants argue on appeal that: (1) there was insufficient evidence presented at trial to support their convictions; (2) imposition of concurrent sentences for their convictions based upon manufacture of marijuana and possession of marijuana with intent to distribute violates the Double Jeopardy Clause; (3) imposition of concurrent sentences for their convictions based upon conspiracy and the underlying offenses violates the Double Jeopardy Clause; (4) the District Court erred in admitting evidence concerning a second marijuana planting and in using this evidence to sentence the defendants; (5) the government improperly introduced evidence that Bobby Sizemore exercised his right to remain silent; and (6) the District Court erred in admitting testimony regarding the defendants' unemployment. We find no merit in any of the grounds raised, and affirm.
 
 I.
 
 2
 Approximately one week prior to August 6, 1991, federal law enforcement officers conducted an aerial surveillance of the Daniel Boone National Forest in the Pulaski County, Kentucky area. During these flights, officers spotted what appeared to be two marijuana patches, plotted them from the air, and then sent several officers to look for these patches. The officers found and entered the marijuana patches where they observed an estimated three hundred (300) plants.[1] The plants had been tilled, fertilized, and, according to United States Forest Service Officer, Ronnie Dykes, appeared well taken care of. Officer Dykes determined that the marijuana plants were in the "budding stage" and about a month away from harvest. The plants were supported by two sets of string located within the patches and surrounded by three-foot high chicken wire to keep out animals. Garden dust bags and cow manure bags were also observed at each patch.
 
 
 3
 On August 6, 1991, law enforcement officers from the Forest Service, the National Parks Service, and members of the National Guard set up surveillance around the marijuana patches. Sergeant Lonnie Tungate observed the defendants approach and enter the first patch, and he heard Larry Sizemore say, "this string is loose from the last time." Several other officers involved in the surveillance observed the defendants walking through the plot examining and straightening the plants and adjusting the string that was holding the plants up. As the officers were attempting to get their camera in a position to videotape the defendants' activity, they rustled some bushes and saw Larry Sizemore look in their direction. Thereafter, Officer Dykes, fearing he had been seen by the defendants, announced himself and stated to the defendants that they were under arrest. Larry Sizemore put his hands up and remained where he was, while his brother Bobby ran from the patch. Bobby Sizemore was located and arrested about three hundred (300) feet from the defendants' four-wheel all terrain vehicle (ATV). The ATV was parked in the woods, out of sight from the dirt and gravel road leading into the area. Upon the defendants' arrest, Officer Harold Sizemore of the Forest Service asked the defendants what they were doing so far away from Leslie County, to which the defendants responded, "trying to get away from you" or "you'uns."[2]
 
 
 4
 On August 15, 1991, the defendants were charged with one count of conspiring to manufacture and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846; one count of manufacturing (growing and producing)[3] approximately 429 plants of marijuana, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B), and 18 U.S.C. § 2(a) and (b); and one count of possessing with intent to distribute approximately 429 plants of marijuana, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B), and 18 U.S.C. § 2(a) and (b). At trial, the defendants testified that they never touched the strings on the plants and that they were only in the woods scouting for squirrel, in anticipation of hunting season that was to begin shortly. On January 22, 1992, the jury found the defendants guilty on all three counts. On March 30, 1992, the defendants were sentenced to a term of seventy-eight (78) months imprisonment on each of the three counts to be served concurrently; a four (4) year term of supervised release; and a Special Mandatory Assessment in the amount of $150.00. This timely appeal followed.
 
 II.
 Sufficiency of the Evidence
 
 5
 At the close of the government's case-in-chief, defendants moved for judgment of acquittal pursuant to Fed.R.Crim.P. 29. Defense counsel, however, failed to renew the Rule 29 motion at the close of all the evidence. Generally, when the sufficiency of the evidence is challenged on appeal, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). However, "the standard of review is different where the defendant fails to preserve his right to challenge the sufficiency of the evidence." United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989). This Court has held, "[a]bsent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew the Motion at the close of all the evidence." Id. (quoting United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984)). Thus, absent a manifest miscarriage of justice, defendants have forfeited their right to challenge the sufficiency of the evidence. Defendants contend that such injustice has occurred in this case because no jury could find, based solely upon the defendants' presence in the marijuana patch, that they conspired to manufacture and possess with intent to distribute marijuana.
 
 
 6
 At trial, a number of law enforcement officials testified regarding the defendants' activity in the marijuana patch, namely their straightening up the marijuana plants and adjusting the strings. One officer heard Bobby Sizemore say "these strings are loose from the last time," indicating defendants' familiarity with the marijuana patch. Additionally, the patch in which defendants were arrested contained over two-hundred marijuana plants. Such a large quantity of plants tends to establish an intent to distribute. See, e.g., United States v. White, 932 F.2d 588, 590 (6th Cir.1991) (per curiam) ("intent to distribute a controlled substance has been inferred solely from possession of a large quantity of the substance") (quoting United States v. Franklin, 728 F.2d 994, 998 (8th Cir.1984)). Thus, unlike White, this case presents evidence which supports an inference of manufacture and possession with intent to distribute marijuana.[4]
 
 
 7
 The jury also heard the defendants' testimony that they accidently came upon the marijuana patches while scouting for squirrel; that they never touched any of the plants; and that they never touched any of the strings because they thought they might be booby trapped. In considering the sufficiency of the evidence, it is not for this Court to weigh the evidence or determine the credibility of witnesses. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). "It is for [jurors] and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story." Id. (quoting United States v. Bailey, 444 U.S. 394, 414-15 (1980)). In finding the defendants guilty on all three counts the jury must have credited the law enforcement officers and their testimony is sufficient to support these convictions. Accordingly, no manifest injustice has occurred.
 
 III.
 Double Jeopardy Violations
 
 8
 Defendants next argue that Count One of the indictment charging the offense of manufacturing marijuana and Count Two charging the offense of possession of marijuana with intent to distribute constitute the same offense, such that the imposition of concurrent sentences for convictions on each count violates the Double Jeopardy Clause of the Fifth Amendment. The Supreme Court has made clear that the Double Jeopardy Clause "protects against multiple punishments for the same offense." Grady v. Corbin, 495 U.S. 508, 516 (1990) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). The defendants concede that this Court's decision in United States v. Miller, 870 F.2d 1067 (6th Cir.1989), is controlling.
 
 
 9
 In Miller, this Court addressed the issue whether the offense of manufacturing a controlled substance and the offense of possession of a controlled substance with intent to distribute are separate and distinct offenses so as to permit the imposition of consecutive sentences. Id. at 1069. In deciding this issue, the Court relied on the Blockburger test, which states:
 
 
 10
 where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
 
 
 11
 Blockburger v. United States, 284 U.S. 299, 304 (1932). See also United States v. Barrett, 933 F.2d 355, 360 (6th Cir.1991) ("The Supreme Court in Grady appears to indicate that the Blockburger test remains the sole test to determine whether the double jeopardy clause bars multiple punishments."). This test focuses upon the statutory elements of the charged offenses, not on whether the offenses involved a single course of conduct. Thus, "[i]f each [crime] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Miller, 870 F.2d at 1070 (quoting Iannelli v. United States, 420 U.S. 770, 785 n. 17 (1975)). This Court went on to state that:
 
 
 12
 Applying these principles to the present case, we find that the manufacture of marijuana and the possession with intent to distribute marijuana are "two statutory offenses [that] may be punished cumulatively," as each offense "requires proof of a fact which the other does not." The offense of possession with intent to distribute undoubtedly can be proved without any proof of manufacture of that substance. Furthermore, the offense of manufacturing, while likely involving proof of possession, does not require any proof regarding an intent to distribute the substance. Personal consumption, for example, may be intended. See United States v. Roberts, 747 F.2d 537, 547 (9th Cir.1984) ("It is clearly possible to manufacture marijuana without possessing it with intent to distribute it to third parties--i.e., by growing it for personal use."). Thus, each statutory offense requires proof of an additional fact which the other does not.
 
 
 13
 Miller, 870 F.2d at 1071 (citations omitted). Because Miller is dispositive and binding upon this Court, the District Court did not err in imposing multiple punishments for the defendants' convictions for manufacturing marijuana and possession of marijuana with intent to distribute, as they are two statutory offenses which may be punished cumulatively.
 
 
 14
 Similarly, despite defendants' contention to the contrary, imposition of concurrent sentences for convictions based on conspiracy as well as manufacturing and possessing with intent to distribute (arising from the same transaction) does not constitute a double jeopardy violation. Conspiracy and the underlying substantive crimes (manufacturing and possessing with intent to distribute) are separate offenses, each requiring proof of an element not required by the other. See Barrett, 933 F.2d at 361. "No merger of offenses occurs in such a situation." Id. The manufacturing and possession charges do not require multiple persons for their commission; a single individual could accomplish these. Id. With respect to the proof of conspiracies involving drugs, however, "to obtain a conviction under section 846, the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991) (quoting United States v. Stanley, 765 F.2d 1224, 1237 (5th Cir.1985)). "The imposition of multiple punishments therefore passes the Blockburger test and no double jeopardy violation occurs." Barrett, 933 F.2d at 361. See also United States v. Felix, 112 S.Ct. 1377 (1992) (reiterating the well-established rule that a substantive crime and a conspiracy to commit that crime are not the "same offense" for double jeopardy purposes even if based on the same underlying incidents because the essence of a conspiracy offense is in the agreement to commit a crime); United States v. Cooke, 795 F.2d 527, 530 (6th Cir.1986) (holding that because the proofs required for conviction of the substantive offense and the conspiracy were not identical, defendant's conviction on both charges did not violate the double jeopardy clause).
 
 IV.
 Comment on Defendant's Post-Arrest Silence
 
 15
 The Fifth Amendment protects a criminal defendant from being required to give incriminating testimony. In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court held that this protection prevents a prosecutor from commenting or relying at trial upon the post-arrest silence of the defendant, since the right to remain silent carries an "implicit" assurance that "silence will carry no penalty." Id. at 618. Defendant Bobby Sizemore contends that the trial record contains an unconstitutional reference to his post-arrest silence in violation of Doyle. At trial, a witness for the government, Dennis Enix, testified regarding the arrest of Bobby Sizemore. Enix described seeing defendant sitting on a stump, asking him if he had any firearms, and making him stand up and put his arms in the air, whereupon he arrested the defendant. Specifically, Enix testified that he "asked [defendant] what he was doing there, and [defendant] said he was out walking in the woods and he appeared to be--." Defense counsel objected to this testimony due to the absence of testimony about defendant being advised of his rights. The judge then directed the prosecutor to "go on to something else." Thereafter, the prosecutor engaged in the following colloquy with Enix:
 
 
 16
 Q. Okay. Did you ask him questions before you arrested him or after you arrested him?
 
 
 17
 A. After I arrested him, of course, I cuffed him and read him his rights. And I asked him, "Have you got anything to say?" And he said, "No."
 
 
 18
 Joint App. at 55. Defense counsel did not object to this response.[5] In the absence of any objection, we must review for plain error. See Fed.R.Evid. 103(d). Review for plain error, like review for failure to raise a claim below, "should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice." Finch v. Monumental Life Insurance Co., 820 F.2d 1426, 1432 (6th Cir.1987) (quoting United States v. Grosso, 358 F.2d 154, 158 (3d Cir.), cert. denied, 385 U.S. 810 (1966)).
 
 
 19
 Defendants' argument that Enix's remark about Bobby Sizemore's post-arrest silence constitutes a Doyle violation has been undercut by the Supreme Court's opinion in Greer v. Miller, 483 U.S. 756 (1987). The Greer Court clarified that "the holding of Doyle is that the Due Process Clause bars 'the use for impeachment purposes' of a defendant's postarrest silence." Id. at 763. In the case at hand, the prosecution never called attention to the defendant's silence. Equally important, the prosecution never attempted to contradict defendant Bobby Sizemore's testimony by referring to Enix's statement: no further questions of anyone, including Bobby Sizemore, were asked on the subject, and no further mention of it was made in front of the jury. See United States v. Stubbs, 944 F.2d 828, 835 (11th Cir.1991). Furthermore, the question posed by the prosecution did not call for an offending answer.
 
 
 20
 Other courts have reasoned that "[w]hile a single comment alone may sometimes constitute a Doyle violation, the Supreme Court's opinion in Greer makes clear that a single mention does not automatically suffice to violate defendant's rights when the government does not specifically and expressly attempt to use--as was attempted in Doyle and in Greer--the improper comment to impeach defendant." Id.; Lindgren v. Lane, 925 F.2d 198, 201 (7th Cir.), cert. denied, 112 S.Ct. 105 (1991) ("As explained in Greer v. Miller, it is the use of an accused's silence against him at trial by way of specific inquiry or impeachment that forms the basis for a violation of the Fourteenth Amendment."). See also Smith v. Cadagan, 902 F.2d 553, 557 n. 4 (7th Cir.), cert. denied, 498 U.S. 865 (1990) ("The Sixth Circuit similarly has made it clear--albeit in a somewhat different situation--that concern with the exploitation of silence is the factor that must govern our application of Doyle.") (citing United States v. Crowder, 719 F.2d 166 (6th Cir.1983), cert. denied, 466 U.S. 974 (1984)). Here, the prosecutor never undertook to impeach the defendant on his post-arrest silence. To avoid drawing any attention to Enix's remark, defense counsel did not request any curative instruction or admonition, and defendant's "postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference." Greer, 483 U.S. at 764-65. Consequently, the District Court did not commit plain error in allowing the challenged testimony.
 
 V.
 
 21
 Testimony Regarding the Second Marijuana Patch
 
 
 22
 The testimony offered at trial established that the officers' surveillance of the Daniel Boone National Forest uncovered two marijuana plots. Officer Dykes testified that plot one contained approximately 284 plants and plot two approximately 145 plants. These plots were approximately three quarters of a mile apart. Defendants were found and arrested in plot one. Defendants contend that because they were never seen anywhere near plot two, it was error for the District Court to admit testimony regarding this plot, and that admission of such irrelevant and highly prejudicial evidence deprived them of a fair trial.
 
 
 23
 The decision to admit relevant, but potentially prejudicial, evidence is committed to the sound discretion of the District Court. See United States v. Schrock, 855 F.2d 327, 333 (6th Cir.1988). In reviewing the District Court's decision for an abuse of discretion, this Court must view the evidence in the light most favorable to its proponent, giving "the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Id. (citations omitted). Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 401.
 
 
 24
 In this case, the government sought to demonstrate that based upon the similarities in the way the two patches were cultivated, whoever was responsible for cultivating the marijuana plants in patch one was likewise responsible for cultivating the plants in patch two. The defendants were arrested after law enforcement officers observed them straightening the plants and strings in plot one. In allowing into evidence testimony regarding the plants in plot two, the District Court relied upon the following similarities between the patches: the same type of wire surrounding the perimeter of both patches; the same type of string holding the plants; the same pattern of placement of the wires and string; the same dust bags; and the same brand of cow manure found at both patches. Bearing in mind this Court's deferential standard of review, we find that the District Court did not abuse its discretion in admitting this evidence as it is relevant to the issue of whether the defendants' drug activity encompassed the plants in patch two.
 
 
 25
 Similarly, the District Court did not err in using the plants found in plot two to determine the defendants' sentences. Defendants were charged with and convicted of manufacturing 429 marijuana plants. This was also the number of plants the District Court used to calculate the defendants' base offense levels under the Sentencing Guidelines.[6] Defendants contend that it was error for the court to count the marijuana plants that were not located in the marijuana patch in which the defendants were arrested.
 
 
 26
 This Court has held that, "there is no due process or sixth amendment violation for the district judge, rather than the jury, to determine the quantity of drugs involved for offenses under § 841 and to do so under the preponderance of the evidence standard." United States v. Rigsby, 943 F.2d 631, 639-40 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992) (citing United States v. Hodges, 935 F.2d 766 (6th Cir.), cert. denied, 112 S.Ct. 317 (1991)). In Hodges, the Court explained that quantity is not an element of the offense, but rather the question of quantity is raised only in the penalty provision and is therefore properly left to the judge's determination for sentencing. Id. See also United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990) (holding that section 841(b) sets forth penalty provisions only and not "lesser included" offenses, and as such, "the sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and to sentence accordingly"). Additionally, the commentary to the sentencing guidelines, U.S.S.G. § 1B1.3(a)(2) (Relevant Conduct), also indicates that the sentencing judge has the discretion to consider any and all evidence of the quantity of drug involved. Moreno, 899 F.2d at 474.[7]
 
 
 27
 Here, the District Court determined that the similarities between the two patches was sufficient to link defendants to the 145 plants growing in plot two. Based on these similarities, the District Court did not clearly err in finding that the government proved, by a preponderance of the evidence, that defendants conspired to manufacture or possess with intent to distribute, 429 marijuana plants. Accordingly, the District Court also did not err in including all 429 plants in the calculation of defendants' base offense levels. See Hodges, 935 F.2d at 770 ("[O]ur Circuit's precedent has explicitly rejected any due process argument and implicitly rejected any sixth amendment argument defendant ... is able to make with regard to the judge's ability, once a conviction has been entered, to determine the amounts of drugs involved and sentence accordingly").
 
 VI.
 
 28
 Defendants' final argument is that the District Court erred in admitting testimony concerning the defendants' (and their family members') unemployment. Again, absent an abuse of discretion, this Court will not disturb the judgment of the trial court respecting the introduction, presentation, or exclusion of evidence. Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982). During cross-examination, Larry Sizemore testified, without objection, that both he and his brother were unemployed. The defense objected, however, to questioning regarding the employment status of the defendants' two brothers, John and Roger Sizemore. The District Court overruled the objection and subsequent testimony revealed that both John and Roger lived in Pulaski County; that John lived within four (4) miles of the marijuana patch and that Larry left his ATV at John's house; and that Roger and John were also unemployed at the time of the offense.
 
 
 29
 In finding the evidence relevant, the District Court accepted the reasoning of the prosecution that:
 
 
 30
 The indictment says [defendants did conspire together and with] divers other persons, known and unknown. I submit that the evidence here, there's more than just these two people involved, they had a base of operation and someplace to store tools with which to garden and work, they didn't bring them over on their A.T.V.
 
 
 31
 Joint App. at 83. Because this evidence is relevant to the conspiracy issue, the District Court did not abuse its discretion in permitting its introduction.
 
 VII.
 
 32
 For the aforementioned reasons, defendants' convictions and sentences are AFFIRMED.
 
 
 
 [1]
 The evidence adduced at trial indicated that there were two hundred eighty-four (284) marijuana plants in patch one and one hundred forty-five (145) plants in patch two. Patch two was three-quarters of a mile from patch one
 
 
 [2]
 According to Officer Sizemore, the marijuana patch in which the defendants were arrested was about one (1) hour away from Stinnett in Leslie County where the defendants lived
 
 
 [3]
 21 U.S.C. § 802(15) defines "manufacture" broadly to include "production" which in turn is defined in § 802(22) to include "planting, cultivation, growing, or harvesting...."
 
 
 [4]
 In White, 932 F.2d 588 (6th Cir.1991), this Court overturned a conviction for possession of marijuana where "the only evidence linking White to the marijuana was the fact that he lived three feet from the patch." Id. at 589. "The actual cultivator of the patch was unknown," and "overgrowth ... between the [residence] and the patch" plus "White's disability and apparent immobility" weighed heavily against any inference that White was the cultivator or owner of the patch. Id. at 589-90. In contrast, while the defendants did not own the property where the contraband was found, their activity in the patch supports an inference that they were the cultivators
 
 
 [5]
 Prior to the cross-examination of Enix, defense counsel made a motion in limine to prevent the prosecution from commenting further on the fact that Bobby Sizemore said he was just walking in the woods, because this comment was made before Bobby was mirandized. Defendants never argued, however, that any of Enix's other comments deprived them of a fair trial
 
 
 [6]
 Pursuant to Section 2D1.1 of the Sentencing Guidelines, in a case involving marijuana plants, if the offense involved 50 or more plants, each plant is to be treated as an equivalent of 1 kilogram of marijuana. Guideline 2D1.1(c)(8) indicates a base offense level of 28 for offenses involving at least 400 kilograms but less than 700 kilograms of marijuana. Since the offense in the case at hand involved 429 marijuana plants, the base offense level recommended in the pre-sentence report and used by the District Court was 28. Defendants submit that only the plants in plot one should be counted because there is insufficient evidence to link defendants to plot two. This would reduce the amount of marijuana to 284 kilograms (because there were 284 plants in plot one), which corresponds to a base offense level of only 26
 
 
 [7]
 The Commentary to section 1B1.3 provides, in pertinent part, that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Thus, even if the court had instructed the jury, as the defendants wanted, to make a determination as to whether the defendants were guilty only of offenses with respect to plot one, the District Court still could have used the plants from plot two in determining the defendants' sentences