## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2017, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Crum
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Colton Duria Lee, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 14, 2017 <br><br> Court of Appeals Case No. <br> 29A02-1708-CR-1689 <br><br> Appeal from the Hamilton <br> Superior Court <br><br> The Honorable Gail Bardach, <br> Judge <br><br> Trial Court Cause No. <br> 29D06-1703-F6-1938 |

**Bailey, Judge.**

# Case Summary

Colton Duria Lee ("Lee") appeals his conviction, following a jury trial, for battery resulting in moderate bodily injury as a Level 6 felony.[1] We affirm.

# Issues

Lee raises the following issues on appeal:

I. Whether the trial court committed fundamental error when it allowed a police officer's testimony that Lee did not wish to speak to police after receiving *Miranda* warnings.

II. Whether Lee received ineffective assistance of trial counsel.

# Facts and Procedural History

On March 2, 2017, Lee and Benjamin Sanders ("Sanders") were housed in the same cell block of the Hamilton County Jail. Sanders was injured on that day and, on March 16, the State charged Lee with battery of Sanders, resulting in moderate bodily injury. Sanders testified at Lee's June 20 jury trial that, on March 2, he and Lee argued over a sketch pad and Lee then "ran up on [Sanders] and pushed" him. Tr. Vol. II at 88. Sanders said he "caught a little

---

[1] Ind. Code § 35-42-2-1(e).

bit of air and then landed" on a metal chair that was bolted to the ground in a common area of the cell block. *Id.* at 89.

[4] Sanders testified that he was not able to move or breathe properly after he landed on the chair. At first, he thought the pain and discomfort would pass and he returned to his cell. However, the pain did not pass but became worse, and he could not take deep breaths. Sanders testified that the pain was the worst pain he ever felt in his life.

[5] Suzanne Deegan ("Deegan"), the jail nurse, also testified at the jury trial. She stated that jail officials brought Sanders to her that same day, and, when she examined him, he was unable to breathe deeply; he was sweaty and pale; and "he acted like he was in a lot of discomfort." *Id.* at 112. Deegan observed a large red mark on Sanders' right "flank," and she determined that Sanders needed to be treated at a hospital emergency room. *Id.* Before Sanders was transported to the hospital, he told Deegan that Lee was the person who had pushed him into a chair, causing his injuries.

[6] Sanders remained at the hospital for four days, after which the jail placed him in its medical ward for two additional days for monitoring and treatment of his pain. Sanders testified that, while he was conscious at the hospital, medical personnel made an incision in his side and inserted a chest tube, which caused him additional pain. Deegan also testified that, while Sanders was at the hospital, she called the hospital to obtain an update on his condition, as she typically does in order to obtain treatment information and provide updates for

ongoing care to the jail's doctor and other jail medical personnel. She testified, without objection, that the charge nurse from the hospital informed her that Sanders did not have a broken rib but did have a collapsing lung. Deegan explained that when the lung is either torn or punctured, air seeps out causing the lung to collapse. She stated that, when the air leaks slowly, as it appeared to be doing in Sanders' case, that often is the result of a tear rather than a puncture in the lung tissue.

[7] Hamilton County Jail Lieutenant Dustin Castor ("Lt. Castor") testified at Lee's trial that he was on duty as shift commander at the jail on March 2 when jail personnel informed him that an altercation had occurred between two inmates and one inmate needed to be sent to the hospital. Lt. Castor said he then went to the injured inmate, Sanders, and asked him what had happened. Sanders told Lt. Castor that Lee had pushed him. Lt. Castor testified that he later reviewed a surveillance video that captured the altercation, but the "video quality was horrible." Tr. Vol. II at 141, 143. However, Lt. Castor testified that, from "what [he] could tell from the video," it "looked like" an inmate other than Lee had pushed Sanders. *Id.* at 141-42.

[8] Hamilton County Sheriff's Office Detective Todd Rees ("Det. Rees") also testified at Lee's trial. He stated that he was the detective assigned to investigate how Sanders had been injured on March 2. Det. Rees interviewed Sanders at the hospital the day after the injury, and he testified that Sanders identified and described Lee as the person who had pushed him onto the chair. Det. Rees also showed Sanders a photograph of Lee, and Sanders again

identified Lee, the person in the photograph, as the person who had pushed him.

[9]     At the end of Det. Rees' testimony, the following exchange occurred, without objection:

> [Prosecutor:] All right. What's the next step you took in the investigation, if any?
>
> [Det. Rees:] Then I went back to the Hamilton County Jail[,] and me and another detective interviewed approximately six inmates in Mr. Lee's cell. And I ended up interviewing Mr. Lee and read him his *Miranda* Rights and he didn't want to talk.
>
> [Prosecutor:] Okay. Any further steps in the investigation?
>
> [Det. Rees:] I mean, just filled out charging information and sent it over.

Tr. Vol. II at 150.

[10]    On June 20, 2017, the jury found Lee guilty as charged, and, on June 28, the trial court sentenced him accordingly. This appeal ensued.

# Discussion and Decision

## *Doyle* Violation

[11]    Citing *Doyle v. Ohio*, 426 U.S. 610 (1976), Lee contends that the trial court erred in allowing Det. Rees to testify that Lee did not wish to speak to police after

receiving *Miranda* warnings. In *Doyle*, the United States Supreme Court held that using a defendant's post-arrest, post-*Miranda* silence to impeach an exculpatory explanation offered for the first time at trial violated the defendant's due process rights. *Id*. at 618; *see also Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986) (applying *Doyle* to also prohibit use of a defendant's silence to establish guilt). The *Doyle* principle "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial," *Barton v. State*, 936 N.E.2d 842, 850 (Ind. Ct. App. 2010), *trans. denied*, or "as affirmative proof in the State's case in chief." *Kubsch v. State*, 784 N.E.2d 905, 914 (Ind. 2003).

[12] However, as an initial matter, we observe that Lee admittedly failed to object at trial to Det. Rees' testimony regarding Lee's silence. It is well-established that we generally will not address an argument that was not raised in the trial court and is raised for the first time on appeal.

> [A] trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Accordingly, as a general rule, a party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court. *Marshall v. State*, 621 N.E.2d 308, 314 (Ind. 1993). In such circumstances the argument is waived. *Id*.

*Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). By failing to raise his objection to Det. Rees' testimony at trial, Lee has waived our review of that issue.

[13]　Waiver notwithstanding, we find no *Doyle* violation.[2] The rule articulated in *Doyle* is not "'a prima facie bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor.'" *Willsey v. State*, 698 N.E.2d 784, 793 (Ind. 1998) (quoting *Lindgren v. Lane*, 925 F.2d 198, 202 (7th Cir. 1991)). The crucial constitutional question "is 'the particular use to which the post-arrest silence is being put.'" *Id*. (citing *Lindgren*, 925 F.2d at 202). "A jury's knowledge that a defendant initially remained silent is not a problem when that knowledge is not used to subvert the defense in *Doyle* fashion." *Mendenhall v. State*, 963 N.E.2d 553, 565 (Ind. Ct. App. 2012), *trans. denied*.

[14]　Here, the testimony of Det. Rees that Lee now challenges is, in full: "And I ended up interviewing Mr. Lee and read him his *Miranda* Rights and he didn't want to talk." Tr. Vol. II at 150. The prosecutor did not specifically elicit that information from Det. Rees, nor did the prosecutor—or anyone else—make prior or further mention of that information. Certainly no one urged the jury to draw any conclusion from Lee's decision not to speak to the police. Thus, unlike in *Doyle*, the State did not put Lee's post-arrest silence to any improper

---

[2] Because we find no *Doyle* error, we need not address Lee's contention that the fundamental error exception to waiver applies.

use, either as evidence of guilt or to impeach him. And, the mere mention of Lee's post-arrest silence, alone, does not constitute a *Doyle* violation. *Mendenhall*, 963 N.E.2d at 565.

## Ineffective Assistance of Trial Counsel

[15] Lee asserts that his trial counsel was ineffective for failing to object to Det. Rees' testimony regarding Lee's post-*Miranda* silence and to the testimony of the jail nurse, Deegan, regarding the hospital's diagnosis of Lee's condition.[3] As the Indiana Supreme Court has observed, we

> review claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id*. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id*. at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id*. at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id*. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

---

[3] Because he raises a record-based claim of ineffective assistance of trial counsel, Lee properly raises the claim on direct appeal. *See Woods v. State*, 701 N.E.2d 1208, 1211-12 (Ind. 1998).

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002).

[16] We will not second-guess trial counsel's strategy and tactics unless they are so unreasonable that they fall outside objective standards. *See, e.g.*, *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Wentz*, 766 N.E.2d at 361. And if a claim of ineffective assistance of counsel can be disposed of by analyzing the prejudice prong alone, we will do so. *Benefield*, 935 N.E.2d at 797 (citing *Wentz*, 766 N.E.2d at 360).

[17] Here, we need not address whether trial counsel's performance was deficient because, even if it was, Lee has failed to show a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different. As noted above, Lee was not harmed by his counsel's failure to object to testimony about his post-*Miranda* silence because there was no *Doyle* violation. Moreover, even if there had been a *Doyle* violation, Lee failed to establish that the outcome of his trial would have been different had Det. Rees' not been permitted to testify that Lee remained silent after *Miranda* warnings. The victim, Sanders, testified that he was acquainted with Lee, and Lee was the person who pushed him and caused his injuries. There was evidence that Sanders identified Lee as the perpetrator immediately after the incident—to Lt. Castor and to the jail nurse, Deegan—and also the next day—to Det. Rees. Given the evidence that Lee was the person who pushed Sanders, we cannot say the outcome of Lee's

trial would have been different without Det. Rees' testimony mentioning that Lee remained silent after being given *Miranda* warnings.

[18]     Similarly, even if we assume for the sake of argument that Lee's counsel should have objected to the jail nurse's hearsay testimony regarding Sanders' punctured lung, there was sufficient non-hearsay evidence that Sanders suffered "moderate bodily injury" to sustain Lee's conviction.   Sanders testified that Lee pushed him, causing him to fall onto a metal chair and experience the worst pain of his life.  Both Sanders and Deegan testified that Sanders had trouble breathing and was in pain.  Deegan testified that Sanders also had a large red mark on his right side, and that his condition was serious enough that he needed to be treated at a hospital.  And both Sanders and Deegan testified that Sanders was, in fact, hospitalized for four days due to the injury caused by Lee and placed on the medical ward of the jail for another two days after his release from the hospital.  That evidence, alone, is sufficient to show that Sanders suffered "moderate bodily injury" as a result of Lee's battery of him. *Cf., e.g.*, *Whitlow v. State*, 901 N.E.2d 659, 661-62 (Ind. Ct. App. 2009) (holding that evidence that defendant struck victim, caused her severe pain, and left marks on her body was sufficient evidence to show *serious* bodily injury, even though victim did not seek medical attention or take pain medications for her injuries).  Lee has failed to establish that the outcome of his trial would have been different if Deegan had not been permitted to testify that the hospital said Sanders had a punctured lung.

# Conclusion

[19] Lee waived his *Doyle* claim by failing to raise it in the trial court. Waiver notwithstanding, Lee has failed to show that Det. Rees' testimony about Lee's silence amounted to a *Doyle* violation. And Lee has failed to show that he was prejudiced by his trial counsel's alleged ineffective performance.

[20] Affirmed.

Kirsch, J., and Pyle, J., concur.