COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Cole and Overton
Argued at Richmond, Virginia


MONTE PULLEY
                                            OPINION BY
v.   Record No. 1689-98-2          JUDGE RICHARD S. BRAY
                                        FEBRUARY 22, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
                        James A. Luke, Judge

          David B. Hargett (Joseph D. Morrissey;
          Morrissey & Hershner, PLC, on brief), for
          appellant.

          Virginia B. Theisen, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Monte Pulley (defendant) was convicted by a jury of

manslaughter.  On appeal, he complains that the trial court

erroneously (1) denied a mistrial after a Commonwealth witness

referenced defendant's post-<u>Miranda</u> invocation of his right to

counsel, and (2) refused to permit impeachment of a Commonwealth

witness.  We disagree and affirm the conviction.

                                 I.

     During trial of defendant before a jury on indictments

alleging first-degree murder and use of a firearm in the

commission of such offense, the Commonwealth, on direct

examination, inquired of Police Investigator Mike Thompson:

[COMMONWEALTH]: And did you have occasion to see [defendant] that night?

[THOMPSON]: Yes, ma'am. The first time I saw him was in Sheriff Woodley's patrol vehicle going by me. When I saw him in person face-to-face and spoke to him was at Brunswick County jail.

[COMMONWEALTH]: All right. And when you saw [defendant] did he complain of any marks or any injury?

[THOMPSON]: After I advised him of his Miranda rights and he invoked his right to counsel, he requested that Deputy Washburn take pictures of his injuries.

Defense counsel immediately moved the court for a mistrial, arguing that mentioning "defendant [had] invoked his right to an attorney" was "automatic grounds for a mistrial." In denying the motion, the trial judge commented, "What [Thompson] said was a prelude to the question about any injury. The Court finds the statement to be harmless and not prejudicial to the rights." Defendant subsequently declined the court's offer to "admonish the jury," and no further comment was made on defendant's silence or assertion of his right to counsel.

II.

In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court of the United States concluded that:

> [t]he warnings mandated by [Miranda v. Arizona, 384 U.S. 436, 467-73 (1966)], as a prophylactic means of safeguarding Fifth Amendment rights, require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him,

> and that he has a right to retained or
> appointed counsel before submitting to
> interrogation . . . . [W]hile it is true
> that the Miranda warnings contain no express
> assurance that silence will carry no
> penalty, such assurance is implicit to any
> person who receives the warnings.

Id. at 618 (citation omitted). Thus, the Court reasoned that "it would be fundamentally unfair and a deprivation of due process to allow [an] arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. (emphasis added).

Subsequently, in Wainwright v. Greenfield, 474 U.S. 284 (1986), the Court revisited Doyle and, again, condemned a "breach[] [of] the implied assurance of the Miranda warnings [as] an affront to Due Process[.]" Id. at 292. There, after Greenfield entered a plea of "not guilty by reason of insanity," the prosecution was permitted to introduce evidence that he had "exercised his right to remain silent and . . . expressed a desire to consult counsel before answering any questions." Id. at 286-87. Later, in closing argument and over the objection of defense counsel, the prosecutor reminded the jury of Greenfield's silence and "suggested that [his] repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension . . . inconsistent with . . . insanity." Id. at 287.

In reversing the conviction, the Greenfield Court emphasized, "[t]he point of . . . Doyle . . . is that it is

. . . unfair to promise an arrested person that his silence will not be _used_ against him and thereafter . . . _using_ the silence to impeach [him]" or otherwise "_make use_ of the . . . exercise of those rights in obtaining his conviction." Id. at 292 (emphasis added). Thus, "[w]hat is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the . . . assurance" of Miranda. Id. at 295. The Court also noted that, "[w]ith respect to post-Miranda warnings 'silence,' . . . silence does not mean only muteness:  it includes the statement . . . of a desire to remain silent until an attorney has been consulted."[1] Id. at 295 n.13.

Within a year of deciding Greenfield, the Court was, once more, confronted with a Doyle issue in Greer v. Miller, 483 U.S. 756 (1987), an appeal resulting from a prosecutorial inquiry of a witness which "touched upon Miller's postarrest silence." Id. at 764. Unlike in Doyle and Greenfield, however, the trial court sustained Miller's prompt objection,[2] instructed the jury to "'ignore the question,'" and the record reflected no "further questioning or argument with respect to Miller's silence[.]" Id. at 759, 765. In undertaking the necessary Doyle analysis,

---

[1] Defendant acknowledges on brief that "the request for an attorney is . . . a request to remain silent."

[2] Miller's companion motion for a mistrial was denied by the court.

the Court deemed it "significant that in each of the cases in which [the] Court has applied Doyle, the trial court . . . permitted specific inquiry or argument respecting the defendant's post-Miranda silence."  Id. at 764.  Thus, because "Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference," the Court determined that "no Doyle violation occurred."  Id. at 764-65, 765.

Guided by the lesson of Greer that "it is the use of an accused's silence against him at trial by way of specific inquiry or impeachment that forms the basis for a violation of [Doyle]," numerous federal circuits have decided that "Doyle does not impose a prima facie bar against any mention whatsoever of a defendant's right to request counsel [or remain silent], but, instead, guards against the exploitation of that constitutional right by the prosecutor."  Lindgren v. Lane, 925 F.2d 198, 201, 202 (7th Cir. 1991); see also Noland v. French, 134 F.3d 208, 216 (4th Cir. 1998); Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995); United States v. Stubbs, 944 F.2d 828, 834-35 (11th Cir. 1991).

The Lindgren Court was confronted with a record that mirrored the instant appeal.  A police officer made mention of Lindgren's request for counsel during direct examination by the prosecutor, and the trial court denied defendant's resulting motion for a mistrial.  In affirming, the Court reiterated that

a Doyle inquiry "center[s] . . . around the particular use to which the post-arrest silence is being put[]" and, therefore, requires consideration of the particular circumstances of each case. 925 F.2d at 202. Because "the inadvertent mention of [Lindgren's] request for counsel was not argued to the jury nor was it ever used to impeach [defendant]," his "request for counsel was not used against [him]" and "due process rights were not violated under . . . [Greenfield] and Doyle." Id. at 202-03.

We are persuaded by the rationale of Lindgren, and, similarly, conclude that defendant's right to due process was not compromised by Investigator Thompson's mere mention that defendant had once invoked his right to counsel. The gratuitous comment was not responsive to the question posed to Thompson by the prosecution, and defendant's prompt mistrial motion avoided any inquiry into the subject. Defendant, thereafter, opted to forego an instruction that the jury ignore the remark, and the prosecutor made no related argument to the jury or otherwise exploit the issue. Thus, the words, though improperly spoken by the witness, were not "used" against defendant in any respect and were without evidentiary value. Moreover, the trial court promptly acted to scrupulously safeguard defendant's due process rights. Under such circumstances, the trial court correctly found no Doyle violation.

Defendant's reliance upon Schrum v. Commonwealth, 219 Va. 204, 246 S.E.2d 893 (1978), for a contrary result is misplaced. There, during trial of Schrum before a jury for rape, the prosecutor propounded a series of questions to the investigating detective with respect to "an occasion to talk to the defendant in regard to the matter." Id. at 209, 246 S.E.2d at 897. In response, the detective testified that Schrum, then charged with the offense, voluntarily reported to police headquarters, accompanied by counsel. Further inquiry by the Commonwealth into the attendant "interview" prompted the detective to answer, "As I said, he was with his attorney and his attorney advised him not to make any statement at this time." Defense counsel's immediate objection and motion for a mistrial were overruled by the court, and the prosecutor was permitted to pursue the incident, concluding with the detective's acknowledgment that Schrum was advised of "his rights," "execute[d] a rights waiver" but provided "no statements." Thereafter, the trial judge continued the inquiry, remarking to the witness, "the man has a right to follow his attorney's advice, or not answer, or the attorney to tell you that he didn't want his client to make a statement," adding, "That's not unusual, is it?," prompting the response, "No sir, that's not unusual." Id.

In reversing the conviction, the Court reaffirmed the view that "the Fifth Amendment precludes the prosecution from using an assertion of the privilege against self-incrimination to

discredit or convict the person who asserted it."  Id. at 211, 246 S.E.2d at 898 (emphasis added).  Citing Doyle as dispositive, the Court concluded that the Commonwealth's use against Schrum of his post-Miranda exercise of the rights to silence and counsel offended due process.  See id. at 213, 246 S.E.2d at 899.

Thus, in sharp contrast to the instant record, the prosecutor in Schrum was permitted, despite proper objection, to develop evidence detailing Schrum's exercise of his right to counsel and silence.  Moreover, the trial court involved itself in the issue, further developing the related circumstances for the jury, accentuating the constitutional implications and providing insight into the "[]usual" result when an accused is represented by counsel.  Manifestly, therefore, Schrum's exercise of constitutional safeguards of Miranda was intentionally used against him by the prosecutor and the resulting prejudice was exacerbated by the trial court.

                              III.

Defendant next contends that the trial court erroneously declined to allow a defense witness, Sharon Gross, to testify that Commonwealth eyewitness Derrick Bradley was "high" on the date of the offense.  Again, defendant's argument is without merit.

Gross had seen Bradley on the day of the offense, sometime after she "heard about it."  She initially testified that

Bradley was then "glassy-eyed and high," adding later that he was "high" and "had gone to get a drink." At Gross' first reference to Bradley's condition, the Commonwealth objected, prompting defendant's counsel to respond, before the court ruled, "Judge, I'll move along." However, the court sustained the Commonwealth's objection to Gross' subsequent description of Bradley, noting that, "however [he] was at the time [Gross] saw him is not necessarily how he was at the time of the event." Again, counsel assured the court, "Very well, . . . I'll move along," and abandoned the issue.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). Here, circumstances which may have affected Bradley's ability to observe and recall the offense were relevant, but the defense failed to establish that Gross' evidence, relating to Bradley's condition at an unspecified time after the crime, was probative of that issue. Moreover, her initial testimony, describing Bradley as "glassy-eyed and high," was before the jury for such consideration as it deemed appropriate.

Accordingly, the trial court correctly denied defendant's motion for a mistrial and properly limited defendant's direct examination of Ms. Gross, and we affirm the conviction.

Affirmed.