COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and Kelsey
Argued by teleconference


ROY DENVER SLUDER

v.      Record No. 2531-02-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WALTER S. FELTON, JR.
NOVEMBER 25, 2003


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Michael Morchower (Sherry Netherland; Morchower, Luxton &
Whaley, on brief), for appellant.

Richard B. Smith, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


A jury convicted Roy Denver Sluder of second-degree murder of his estranged wife Loria Thurman Sluder, and of the illegal use of a firearm in the commission of the murder. Appellant contends (1) that the trial court erred in refusing to order a mistrial after the jury heard evidence concerning his invocation of his right to counsel, and (2) that the evidence offered by the Commonwealth was insufficient to convict. We affirm appellant's convictions.

As the parties are fully conversant with the record, and this memorandum opinion carries no precedential value, we recite only those facts necessary to the disposition of this appeal.

BACKGROUND

On appeal, we review the evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the prevailing party in the trial court. Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991); Higginbotham v. Commonwealth, 216 Va. 349, 352,

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

218 S.E.2d 534, 537 (1975). This familiar principle requires us to "'"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"" Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1998) (quoting Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), cert. denied, 450 U.S. 1029, (1981))). The credibility of the witness and the weight to be accorded to the evidence, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

On June 4, 2002, some seven years after the incident, the Bedford County Circuit Court jury convicted appellant of second-degree murder of his estranged wife and of the illegal use of a firearm in the commission of that murder. The jury set his sentence at nineteen years imprisonment for the murder and three years for the use of the firearm. The trial court entered judgment on the jury verdict on September 25, 2002, and sentenced appellant consistent with the jury verdict.

The appellant insisted that the victim died as a result of a self-inflicted gunshot in the bedroom of his trailer home on Smith Mountain Lake, after an emotional discussion during which the victim revealed to appellant that she recently had an affair and had been dating other men.

The jury rejected appellant's testimony that the victim committed suicide, and found that the Commonwealth proved that appellant inflicted the fatal wound. The jury heard conflicting expert testimony from witnesses called by the appellant and by the Commonwealth interpreting the physical evidence at the scene. The appellant testified, permitting the jury to assess his credibility as he insisted that the victim's death was by suicide. It heard testimony of emergency

medical technicians (EMTs) who first arrived on the scene as to appellant's inconsistent statements about the location of the weapon, which he described as the fatal weapon when he first called 911. It heard the EMTs testimony that they searched for the weapon in the bedroom without success and that appellant was left alone in the trailer after their search. The jury heard testimony from a deputy sheriff, who arrived at the scene shortly after the EMTs went outside of the trailer, that he immediately saw the fatal weapon in plain view on the bedroom floor near the victim's body.

The jury learned that appellant and victim married in 1993, after a ten-year relationship, and that they separated in March of 1995. They signed a separation agreement, prepared at the victim's initiative, that included a "separation and interference" clause whereby the parties agreed they could see and reside with other people "free from interference, authority and control . . . of or by the other."

The jury heard testimony from the victim's friends describing her as generally happy and optimistic, as well as being more relaxed and "up beat," following her separation from appellant. In April 1995 the victim was already living separately and apart from appellant. She purchased her own home in Roanoke, while appellant continued to live in a trailer home community, located on Smith Mountain Lake in Bedford County. The jury learned that the victim removed appellant as beneficiary of her life insurance policy. She began dating other men. The jury learned that appellant and the victim continued to see each other regularly and that appellant on occasion assisted the victim around her Roanoke home by painting and doing repairs. The victim would also visit appellant occasionally at the lake.

On June 4, 1995, the day of her death, the victim told a mutual friend that while she loved appellant, "she couldn't handle being married to him." Appellant testified that the victim told him about an affair that she had recently had and that this revelation led to an emotional

discussion. He testified that she "had affairs on me before, but it wasn't nothing we couldn't ever work out or talk about . . . because I know she loved me very much, and I loved her very much." The jury learned that appellant "felt hurt" by the victim's revelation that she had a recent affair and was dating other men.

The jury reasonably concluded that the evidence proved that the victim's death was not the result of suicide, but that the appellant shot the victim in the head at close range while she was sitting on the floor and after the two had quarreled about her recent affair. To prove its case, the Commonwealth presented testimony from the responding emergency personnel, the investigating officers, medical and forensic experts, as well as the victim's friends.

## SUFFICIENCY OF THE EVIDENCE

At trial, the jury heard conflicting versions of the events that resulted in the victim's death. The Commonwealth maintained the victim's death was murder. The defense asserted that her death was a suicide. The appellant maintains the evidence was insufficient to exclude his theory of the evidence and to support the verdict of guilty. We disagree.

We apply the following principles of appellate review to our resolution of this appeal:

> "Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it . . . . Additionally, when a defendant challenges the sufficiency of the evidence, [i]f there is evidence to sustain the verdict, this Court should not overrule it and substitute its own judgment, even if its opinion might differ from that of the jury."

Pease v. Commonwealth, 39 Va. App. 342, 350, 573 S.E.2d 272, 275-76 (2002) (*en banc*), aff'd, ___ Va. ___, ___ S.E.2d ___ (Va. Oct. 31, 2003) (*per curiam)* (quoting Dowden v. Commonwealth, 260 Va. 459, 467, 536 S.E.2d 437, 441 (2000)). On appeal "we review the

- 4 -

jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Id. at 355, 573 S.E.2d at 278. "It is the province of the jury to evaluate the credibility of witnesses." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), revs'g, Hudson v. Commonwealth, No. 0917-01-4 (Va. Ct. App. July 16, 2002).

> After determining credibility and assessing the weight of the testimony, the jury must ascertain what reasonable inferences arise from the facts they found proven by that testimony. . . . If alternative inferences are possible, the jury resolves the differences and determines which inferences are reasonably drawn. The trier of fact has the responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."
>
> \* \* \* \* \* \* \*
>
> [T]he jury decides if the proven facts, and the reasonable inferences drawn from them, establish guilt beyond a reasonable doubt. If so, the jury, as instructed, convicts. If the jury decides that a theory of innocence remains and the theory is reasonable, it, as instructed, acquits. "Whether an alternative hypothesis of innocence is reasonable is a question of fact . . . ."

Pease, 39 Va. App. at 354-55, 573 S.E.2d at 278 (quoting Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997)).

On appeal, as at trial, appellant argues that the evidence was not sufficient for the jury to convict him of murder if, after weighing the evidence, there remained facts that could support death by either murder or suicide. See Feigley v. Commonwealth, 16 Va. App. 717, 432 S.E.2d 520 (1993). Appellant contends that, because the evidence is wholly circumstantial, all proven facts must be consistent with guilt and inconsistent with innocence, and thus exclude every reasonable hypothesis of innocence. See Rogers v. Commonwealth, 242 Va. 307, 317, 410 S.E.2d 621, 627 (1991) (citation omitted).

- 5 -

The law, however, does not distinguish between the weight and value to be given either direct evidence or circumstantial evidence. The jury considers all of the evidence to reach its verdict. See Hudson, 265 Va. at 512-13, 578 S.E.2d at 785. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Id. at 513, 578 S.E.2d at 785 (citing Cox v. Commonwealth, 140 Va. 513, 517, 125 S.E. 139, 141 (1924)). It is not essential that the Commonwealth eliminate every possible or conceivable alternative theory, no matter how remote. It must only exclude hypotheses of innocence that flow from the evidence. Goins v. Commonwealth, 251 Va. 442, 467, 470 S.E.2d 114, 130, cert. denied, 519 U.S. 887 (1996); Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

We review "'not whether there is some evidence to support' [appellant's] hypothesis," but "whether a reasonable jury, upon consideration of all the evidence, could have rejected [appellant's theory of suicide] and found him guilty of murder beyond a reasonable doubt." Hudson, 265 Va. at 513, 578 S.E.2d at 785.

In this case, much of the physical evidence was not in dispute. The two opposing theories arose from the physical evidence found at the scene; the forensic analysis of that evidence; statements by witnesses familiar with the victim and appellant; and the statements that appellant made during the investigation. "'When, as here, conflicting inferences flow from the undisputed evidence, principles of appellate procedure require us to adopt those conclusions most favorable to the Commonwealth if fairly deducible from the proven facts.'" Pease, 39 Va. App. at 361, 573 S.E.2d at 281 (quoting Pugh v. Commonwealth, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982)).

At trial and on appeal, appellant contends that the victim's death was a suicide. He testified that from the bedroom door, he saw the victim standing in the bedroom holding the gun beside her head. The physical evidence, however, permitted the jury to reasonably conclude that the victim was not standing as described by appellant, but was sitting or in a position low to the floor when the fatal wound was inflicted.

The jury heard expert testimony that the victim's fatal injury was to the part of the brain which would cause her body to crumble, torquing or twisting as it fell. Here, when the EMTs found the victim's body, she was lying flat on her back, with her legs outstretched. Despite the appellant's insistence that he observed the victim shoot herself, he was unable to describe how she fell. "'[T]he jury was not required to believe the defendant's explanation, and if that explanation is not believed, the jury may infer that the accused is lying to conceal his guilt.'" Pease, 39 Va. App. at 357, 573 S.E.2d at 279 (quoting Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981)).

"The verdict reflects the jury's decision to disbelieve [appellant's] story." Id. at 356, 573 S.E.2d at 279. Here, the jury concluded it was not reasonable to infer that the victim shot herself while standing as the appellant testified.

Deciding to disbelieve appellant's claim that he saw the victim commit suicide, the jury considered and evaluated appellant's other statements and conduct. Id. at 357, 573 S.E.2d at 279. The jury considered appellant's inconsistent factual accounts given to the EMTs, law enforcement officers, friends and to the jury itself. Despite his claims that his relationship with the victim had no problems or difficulties, the victim moved out four months earlier, bought a new home, removed the appellant as beneficiary on her life insurance policy, and started dating other men. Her friends described her as happy and upbeat following her separation from the appellant.

By appellant's own testimony, immediately prior to the victim's death, he and the victim engaged in an emotional discussion over the victim's admitted relationships with other men. Appellant testified that these relationships "hurt his feelings" and emotionally upset him.

No reasonable theories of innocence remain when the evidence is viewed in the light most favorable to the Commonwealth and all reasonable inferences fairly deducible from it. The jury rejected appellant's claim that the victim committed suicide while standing in the bedroom of his trailer. The record in this case contains ample evidence from which a reasonable jury could conclude that the appellant killed the victim.

## THE MOTION FOR A MISTRIAL

During the Commonwealth's case, Investigator Ray Mayhew was asked by the Commonwealth's attorney to identify appellant in the courtroom. He then asked Mayhew, "Where did you see Mr. Sluder at?" Mayhew answered that appellant was sitting in the back of a police car, adding:

> I went up to speak to Mr. Sluder to interview him in regards to what happened there in the mobile home. And at that point in time this lady came up to me and advised me that she had already contacted an attorney. So at that point in time I still went over and was going to speak to Roy, and Roy advised me that an attorney was on the way. He would rather for me to wait until the attorney got there in which, at that time, I believe . . . .

Appellant promptly objected to Mayhew's testimony. Outside the presence of the jury, appellant moved the court for a mistrial, arguing the remark violated the rule in Doyle v. Ohio, 426 U.S. 610 (1976), which bars the prosecution from eliciting evidence of the defendant's invocation of his constitutional rights to the assistance of counsel and to remain silent when questioned by law enforcement officers.

The trial court sustained the appellant's objection, but denied the motion for a mistrial. It directed the Commonwealth to avoid any further reference to the appellant's statements that he

wanted to talk with counsel before speaking with the investigator and of his invoking his right to remain silent. Following the trial court's refusal to grant a mistrial and its admonition to counsel, the jury returned to the courtroom.

At the request of appellant, the trial court gave a cautionary instruction to the jury.[1] The instruction was drafted by appellant's counsel and agreed to by the court and the Commonwealth. Once the trial court gave the instruction, it asked the jurors if they could comply with the instruction, and stated for the record their indication that they could do so.

On appeal, appellant argues that the trial court erred in refusing to grant a mistrial.

ANALYSIS

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 461 (1992) (*en banc*). Upon appeal, we look to the record as a whole to determine "whether there is a manifest probability" of prejudice to the defendant. Strawderman v. Commonwealth, 3 Va. App. 585, 590, 352 S.E.2d 14, 17 (1987).

Appellant asserts that the holding in Doyle, required the court to declare a mistrial in this case. See Doyle, 426 U.S. at 619. In Doyle, the Supreme Court of the United States reasoned that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. at 618.

In Pulley v. Commonwealth, 31 Va. App. 600, 525 S.E.2d 51 (2000), this Court held that an officer's mere mention that defendant had once invoked his right to counsel, standing alone, does not compromise a defendant's right to due process. Id. at 605, 525 S.E.2d at 54. "'Doyle

---

[1] The trial court offered the jury this cautionary instruction: "The court instructs the jury to disregard any comments regarding Mr. Sluder's right to an attorney or to remain silent. It is not evidence before you, and you shall not draw any inferences from these comments."

does not impose a *prima facie* bar against any mention whatsoever of a defendant's right to request counsel [or remain silent], but instead guards against the exploitation of that constitutional right by the prosecutor.'" Id. at 604, 525 S.E.2d at 53 (quoting Lindgren v. Lane, 925 F.2d 198, 201, 202 (7th Cir. 1991); see also Noland v. French, 134 F.3d 208, 216 (4th Cir. 1998).

In Pulley, the Commonwealth asked a police investigator on direct examination whether the defendant complained of any marks or injuries. The officer testified that "[a]fter I advised him of his Miranda rights and he invoked his right to counsel, he requested that [the deputy] take pictures of his injuries." Pulley, 31 Va. App. at 602, 525 S.E.2d at 52. Pulley's counsel moved for a mistrial because of the reference to the defendant's invocation of his Miranda rights in violation of the rule in Doyle. Reviewing the trial court's denial of Pulley's motion for mistrial, this Court concluded:

> that [the] defendant's right to due process was not compromised by [the investigator's] mere mention [on the witness stand] that [the] defendant had once invoked his right to counsel. The gratuitous comment was not responsive to the question posed to [the investigator] by the prosecution, and [the] defendant's prompt mistrial motion avoided any inquiry into the subject. [The d]efendant, thereafter, opted to forego an instruction that the jury ignore the remark, and the prosecutor made no related argument to the jury or otherwise exploit[ed] the issue. Thus, the words, though improperly spoken by the witness, were not "used" against [the] defendant in any respect . . . . Moreover, the trial court promptly acted to scrupulously safeguard [the] defendant's due process rights. Under such circumstances, the trial court correctly found no Doyle violation.

Id. at 605, 525 S.E.2d at 54.

Following the standard outlined in Pulley, the trial court here minimized the risk of any prejudice to the appellant at the time of the objection and throughout the remainder of the trial. The prosecutor merely asked Mayhew where he saw appellant on the night of the victim's death.

Mayhew's testimony, however, went beyond the question posed by the prosecution. See id. at 604, 525 S.E.2d at 54. Instead, Mayhew testified that on his way to speak with the defendant, he was told that an attorney was on the way to there, first by a woman the record reveals to be appellant's sister, and then by the appellant himself. His comment was only a small portion of his overall testimony. "[A] single comment, which only vaguely and indirectly referenced the defendant's . . . silence, does not violate Doyle." Robinson v. Commonwealth, 14 Va. App. 91, 94, 414 S.E.2d 866, 868 (1992). In addition, nothing in the record indicates that the Commonwealth intentionally sought to elicit the testimony concerning appellant's invocation of his right to an attorney or his right to remain silent.

The defendant's prompt objection avoided further inquiry into the subject. The court quickly sustained the objection to the remark that touched upon appellant's exercise of his rights. See Greer v. Miller, 483 U.S. 756, 764 (1987). It immediately admonished the witness to avoid any reference to appellant's exercise of his constitutional rights. The trial court also directed the prosecutor not to elicit the same evidence from any other witnesses or in his own comments and closing argument. The record shows that the prosecutor made no effort to exploit the issue or to raise it in argument to the jury. "Thus, the words, though improperly spoken by the witness, were not 'used' against [the] defendant in any respect." Pulley, 31 Va. App. at 605, 525 S.E.2d at 54.

To further protect appellant's due process rights, the trial judge promptly gave a cautionary instruction, drafted by appellant's counsel, to the jury. A proper cautionary instruction, if promptly given, may act "to scrupulously safeguard [the] defendant's due process rights." Greer, 483 U.S. at 759, 764. Moreover, jurors are presumed to follow prompt cautionary instructions given by the trial court on the use of evidence. See LeVasseur v.

<u>Commonwealth</u>, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983).  The record reflects the jurors indicated that they could comply with the instruction.

Consistent with this Court's holding in <u>Pulley</u>, we find that while the testimony was improper, the court did not err in denying the motion for mistrial.  The actions of the trial judge cured any harm arising from the improper remarks.  Moreover, the jury later heard testimony of statements that appellant later gave to law enforcement officers investigating the case.  Under the totality of these circumstances, we hold that the trial court's refusal to grant appellant's mistrial motion was not reversible error.

Accordingly, we affirm the judgment of the trial court and the convictions of the appellant.

<u>Affirmed.</u>