**Earl VINCENT, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No.  2007–SC–000413–MR.

Supreme Court of Kentucky.

April 23, 2009.

Shannon Renee Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted Earl Vincent Jr. of two counts of first-degree rape, nine counts of first-degree sodomy, fifteen

counts of first-degree sexual abuse, and three counts of incest. He was sentenced to fifty years' imprisonment.[1] He appeals from the judgment of conviction and sentence as a matter of right.[2]

Vincent advances three grounds for reversal of his convictions and sentence: (1) that palpable error[3] resulted from the prosecutor's assertion in opening statement that the nearly three hundred counts against Vincent in the indictment were not enough; (2) that the trial court committed reversible error in denying his mistrial motion after a testifying law enforcement officer referred to Vincent's decision to remain silent; and (3) that palpable error resulted from the admission of "investigative hearsay" in which a police officer stated that the victims had "disclosed years of rape, sodomy, and incest" by Vincent. We conclude that Vincent is not entitled to reversal so we affirm the judgment.

## I. FACTS.

In 2005, police began investigating allegations that Vincent had sexually abused his granddaughter, C.V. During the course of this investigation, Vincent's daughters, J.H. and A.M., reported that Vincent had also subjected them to sexual abuse, rape, sodomy, and incest during their childhoods in the 1970s and 1980s. The grand jury indicted Vincent for 294 counts of various sexual offenses against J.H., A.M., and C.V.[4]

The case proceeded to trial. A police officer testified concerning his investigation. J.H., A.M., and C.V. each testified. Vincent does not challenge the sufficiency of the evidence on the 29 counts of offenses that were actually submitted to the jury, all of which resulted in convictions. So we will not describe the victims' testimony in detail except to say that that each victim provided graphic details about certain specific incidents and indicated that the alleged offenses occurred over a period of several years. Although none of the alleged victims could pinpoint an exact number of times in which she was subjected to sexual abuse or other offenses, all of them testified to the abuse occurring on numerous occasions. A.M. estimated that

1. Vincent was sentenced to fifty years' imprisonment on each of the two counts of first-degree rape; fifty years' imprisonment on each of the nine counts of first-degree sodomy; ten years' imprisonment on each of the fifteen counts of first-degree sexual abuse; and ten years on each of the three counts of incest, all to run concurrently for a total of fifty years' imprisonment.

2. Ky. Const. § 110(2)(b).

3. See Kentucky Rules of Criminal Procedure (RCr) 10.26 ("A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."). See also Kentucky Rules of Evidence (KRE) 103(e) ("A palpable error in applying the Kentucky Rules

of Evidence which affects the substantial rights of a party may be considered by a trial court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.").

4. The indictment charged Vincent with thirty counts of first-degree rape of A.M.; thirty counts of first-degree rape of J.H.; thirty-six counts of first-degree sodomy of C.V.; thirty counts of first-degree sodomy of J.H.; thirty counts of first-degree sexual abuse of A.M.; twenty counts of first-degree sexual abuse of J.H.; two counts of first-degree sexual abuse of C.V.; and one-hundred-sixteen counts of incest (with specific victims of incest not indicated in the body of the indictment although handwritten notes on the front page of the indictment indicated 36 counts with C.V., 30 counts with A.M., and 50 counts with J.H.).

Vincent sexually abused her "about thirty times," and C.V. estimated that Vincent had her perform oral sex on him twenty-five or thirty times. Vincent denied the allegations.

After the close of the Commonwealth's case, the Commonwealth amended the indictment down from 294 counts to 29 counts.[5] The jury found Vincent guilty of all 29 counts and recommended a sentence of fifty years' imprisonment. The trial court entered a judgment consistent with the jury's verdict and sentencing recommendations.

## II. ANALYSIS.

### A. Any Error from Prosecutor's Statement that Nearly 300 Hundred Counts in Indictment Were Not Enough Was Not Palpable.

■ Although conceding that the issue is unpreserved, Vincent claims he is entitled to relief because of certain comments made by the prosecutor during opening statement. After acknowledging to the jury that Vincent was charged with "three hundred"[6] counts of sexual offenses, the prosecutor commented: "we're not going to relive each and every instance. And that was only a part of it. I don't think three hundred is enough. But you're gonna hear each, as many as you can put those girls through." Vincent made no contemporaneous objection.

Vincent contends that these comments amounted to an improper expression of the prosecutor's personal opinion of guilt and an insinuation that the prosecutor knew of other facts that could not be presented to the jury. Even accepting solely for the sake of argument that the prosecutor's statement was an improper expression of his personal opinion or a suggestion of personal knowledge of facts beyond the evidence presented at trial, Vincent is not entitled to relief unless he can show that the remark resulted in palpable error. Given the victims' specific, graphic, and damning recounting of numerous instances of sexual misconduct, we do not believe that the comment affected Vincent's substantial rights or resulted in a manifest injustice. This means that Vincent is not entitled to palpable error relief under RCr 10.26. And because the comment did not seriously affect the overall fairness of the trial, we do not find it to be prosecutorial misconduct meriting reversal.[7]

■ Vincent contends that the prosecutor admitted during voir dire that he would not be able to prove all of those counts. He alleges the prosecutor knew he could not prove most of the nearly 300 counts but obtained an indictment for such a large number to overwhelm the jury to his prejudice.

We reviewed the record containing the prosecutor's comments made during voir dire. The prosecutor acknowledged an accumulation of nearly 300 counts that oc-

---

**5.** Vincent states in his brief that the 294 counts were amended down to 28 counts; however, this appears to be a miscalculation. From our review of the record, it appears that the charges were amended down to 29 counts of offenses (including 3 counts of incest, 2 counts of first-degree rape, 9 counts of first-degree sodomy, and 15 counts of first-degree sexual abuse).

**6.** The actual number of counts in the indictment was 294.

**7.** *Brewer v. Commonwealth,* 206 S.W.3d 343, 351 (Ky.2006) ("upon a consideration of the overall trial and the context in which the comments in question were made, we do not find that there is a substantial possibility that the Commonwealth's argument seriously affected the overall fairness of the proceedings. Thus, we decline to find that the Commonwealth's comments rise to the level of palpable error.").

curred over a number of decades, and predicted that these counts would have to be "pared down," although he stated that he did not know how many counts would eventually be actually submitted to the jury. He asked whether the potential jury members would hold it against the Commonwealth if only a portion of the charged counts would actually be submitted to the jury.

Having reviewed the record, it does not appear that the prosecutor intentionally obtained an indictment with many times the number of counts eventually submitted to the jury in order to prejudice Vincent. The victims testified to numerous instances of offenses occurring, and two victims each testified to estimates of 25 or 30 instances of certain offenses. We note that the prosecutor and the trial court made an effort to ascertain that each count that was eventually submitted to the jury was identified with specificity; and, apparently, only 29 counts could be identified from the trial testimony with enough specificity.

We also surmise from the record that the Commonwealth had difficulty proving that some of the charged counts had occurred in Edmonson County. Vincent had moved away from Edmonson County following his divorce from J.H.'s and A.M.'s mother in the early 1980s, but he returned to the county frequently after moving. The victims alleged that some of the incidents had occurred while Vincent was in the county visiting relatives after the divorce; although, J.H. and A.M. indicated that some incidents occurred when their parents were still married and Vincent lived in Edmonson County.

Although we would not condone an intentional, baseless tenfold overcharging of criminal counts, the fact that Vincent was initially charged with 294 counts but that only 29 counts were eventually submitted to the jury does not entitle him to relief under the facts of this case.

### B. *Motion for Mistrial Was Properly Denied.*

■ Vincent contends that the trial court committed reversible error by denying his mistrial motion following a testifying officer's reference to his exercising his right to remain silent. After carefully reviewing the record, we find no error.

The Commonwealth called the investigating officer to testify. After the officer described interviewing the alleged victims, the prosecutor then asked him if he had taken any further steps in the investigation. The officer replied, "I was unable to interview Mr. Vincent; he chose not to speak to me in reference to this, and that's the only other steps that were taken." Vincent objected and moved for a mistrial arguing that his exercising his constitutional right to remain silent was not to be presented to the jury.[8] The prosecutor responded to the objection by stating that the reference to Vincent's declining to speak to the officer was inadvertent, presumably meaning that the prosecutor was seeking a response that did not indicate whether Vincent would talk to police. The trial court sustained Vincent's objection, offered to admonish the jury, and denied the mistrial motion. Vincent declined the admonition because he did not want to draw more attention to the officer's remark. Vincent does not point to any other instances at trial of the prosecution draw-

8. In his brief, Vincent states he did not speak to the police when he was ill, citing to a page of the record that refers to the pre-sentence investigation (PSI) report. The statement in the PSI about his illness may refer to a post-trial interview rather than to his refusal to speak to police during the course of the investigation leading to charges.

ing attention to his exercising his right to remain silent.

■ While evidence that a defendant exercised his right to remain silent should not be admitted at trial,[9] it appears in context that the prosecution did not intentionally elicit reference to Vincent's refusal to speak to police. And the trial court offered an admonition, which presumably· would have cured any error unless one of two exceptions had been met:

(1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant, or (2) when the question was asked without a factual basis *and* was inflammatory or highly prejudicial.[10]

Neither of these two exceptions appears applicable here.

The reference to Vincent's exercising his right to remain silent was isolated and brief and, apparently, not intentionally elicited by the prosecution. Since Vincent

has not shown that this reference compromised his right to a fair trial,[11] we cannot conclude that the trial court abused its discretion in denying the mistrial motion.[12]

### C. *No Palpable Error Resulted From Alleged Admission of "Investigative Hearsay."*

■ Lastly, Vincent contends that palpable error resulted from the admission of "investigative hearsay" when the investigating officer testified that the alleged victims "disclosed years of rape, sodomy[,] and incest" by Vincent. We do not agree.

In questioning the investigating officer about his investigation, the prosecutor asked him what kind of allegations the alleged victims made. The officer responded that they "disclosed years of rape, sodomy, and incest" by Vincent. Vincent concedes he failed to object to this testimony.

While perhaps the officer's description of the victims' allegations was hearsay,[13] we fail to see how it affected Vincent's substantial rights.[14] The admission of the

9. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) ("it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.").

10. *Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky.2003) (citation and quotation marks omitted).

11. *Wallen v. Commonwealth,* 657 S.W.2d 232, 233 (Ky.1983) ("But *Doyle* and subsequent cases make it clear that not every isolated instance referring to postarrest silence will be reversible error. It is only reversible error where post-arrest silence is deliberately used to impeach an explanation subsequently offered at trial or where there is a similar reason to believe the defendant has been prejudiced by reference to the exercise of his constitutional right. The usual situation where reversal occurs is where the prosecutor has repeated and emphasized post-arrest si-

lence as a prosecutorial tool. These circumstances do not exist in this case. Here the prosecutor did not focus upon appellant's silence and the comments were not linked to appellant's story. The alleged *Doyle* infraction is harmless.").

12. *Bray v. Commonwealth,* 68 S.W.3d 375, 383 (Ky.2002) (stating that abuse of discretion standard applies to trial court's ruling on mistrial motion and noting that mistrial should only be granted in cases of manifest necessity).

13. KRE 801(c) defines *hearsay* as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

14. RCr 10.26; KRE 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); KRE 103(e).

police officer's very brief summary of what the alleged victims told him certainly did not amount to palpable error [15] given the victims' graphic testimony that followed, detailing several specific instances of sexual misconduct and their belief that it occurred on numerous occasions over long periods of time. So any erroneous admission of "investigative hearsay" did not constitute a palpable error.

### III. *CONCLUSION*.

For the foregoing reasons, we affirm the judgment.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur. SCHRODER, J., concurs in result only.