# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2008-SC-000878-MR

DATE 2/11/10  Kelly Klaber D.c.

DANNY RAY JANES                                                           APPELLANT

V.

ON APPEAL FROM METCALFE CIRCUIT COURT
HONORABLE PHILLIP R. PATTON, JUDGE
NO. 08-CR-00013

COMMONWEALTH OF KENTUCKY                                   APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Danny Ray Janes appeals as a matter of right[1] from his convictions following a jury trial on two counts of assault in the first degree and one count of wanton endangerment. Janes contends that his convictions must be reversed because the Commonwealth improperly commented upon his invocation of his right to remain silent and because the trial court declined to declare a mistrial after one of the victims testified to an uncharged prior bad act allegedly committed by Janes. Finding no reversible error, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY.

Janes lived with Darla Lawless for about nine years. Initially, Darla's two sons, A.L. and A.G., lived with Darla's father; but both eventually moved into

---

[1] Ky. Const. § 110(2)(b).

the home shared by Janes and Lawless. Lawless and Janes began arguing more frequently and intensely, culminating in Lawless calling Janes from work to say that she planned to leave him and live elsewhere. Janes said they would discuss it when Lawless got home.

When Lawless arrived home, Janes, who appeared to be intoxicated, asked if they were going to talk. Lawless responded that they would talk shortly, and she turned to put down her purse. Lawless then heard Janes fall; and when she turned around, Janes was lying on the floor pointing a gun at her. Janes fired a shot; but Lawless escaped to a neighbor's house, where she called 911.

After the authorities arrived at Janes and Lawless's house, they found that A.L. and A.G. had each been shot in the head; and Janes had been shot in the mouth. All three survived, but A.L. and A.G. continue to suffer problems relating to having been shot.

The grand jury indicted Janes on two counts of assault in the first degree (one count for shooting A.L. and one count for shooting A.G.) and one count of wanton endangerment in the first degree (for shooting at Lawless). Janes proceeded to trial on all charges.

At trial, the Commonwealth during opening statement referred to the fact that Janes had told an officer when being questioned about the shootings that something bad had happened; but he was not going to talk about it. During trial, that officer testified that he had interviewed Janes while Janes was

2

hospitalized.  After stating that he had informed Janes of his Miranda[2] rights, the officer began to relate Janes's response when Janes's counsel objected.  The trial court overruled the objection; and the officer testified that Janes had said that "something bad happened that should not have happened, but [Janes] would only talk about it with his attorney present."  The officer testified that he then ceased questioning Janes.

At the conclusion of the officer's testimony, the trial court admonished the jury that it could not hold against Janes his invocation of his rights to remain silent and to have counsel.  During its closing argument, the Commonwealth reminded the jury of Janes's statement that something bad had happened, seemingly to impeach Janes's claim to the jury that he could not remember what had happened on the day of the shootings.

Also at trial, the Commonwealth asked Lawless in direct examination about the history of her relationship with Janes.  Lawless explained that she and Janes had separated many times, including once when she had moved to Illinois for six months.  The Commonwealth asked Lawless why she had ended the relationship with Janes on that prior occasion.  Lawless answered that she had ended the relationship at that time because of Janes's verbal, mental, and physical abuse, describing an instance when Janes had allegedly punched her in the face.  Janes's counsel objected and requested a mistrial; but the trial court denied the mistrial and, instead, admonished the jury to disregard Lawless's response.

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

The jury found Janes guilty of all charges and recommended the minimum penalty for all three charges (ten years' imprisonment for each assault conviction and one year's imprisonment for the wanton endangerment conviction) but recommended that all three sentences be served consecutively, for a cumulative total of twenty-one years' imprisonment. The trial court sentenced Janes in accordance with the jury's recommendation. This appeal followed.

## II. ANALYSIS.

Janes raises two issues on appeal. First, he contends reversal is required because the officer commented upon his invocation of his rights to silence and counsel. Second, he contends the trial court erred by failing to declare a mistrial when Lawless testified about Janes's alleged prior, uncharged bad act of having allegedly punched Lawless. Finding no reversible error, we affirm.

### A. No Reversible Error Because of Comments Upon Invocation of Right to Silence and Counsel.

Janes contends reversible error occurred when the Commonwealth and the officer each referred to his invocation of his right to silence and his right to counsel. The comments in question occurred three times during the trial.

First, in opening statement, the Commonwealth stated, without objection, that the officer had asked Janes about the shootings while Janes

was in the hospital; and Janes had said that "something bad happened, but I'm not going to talk to you about it."

Second, when the officer who interviewed Janes testified, the Commonwealth asked whether the officer had read Janes his rights. The officer responded by testifying that he had read Janes his rights and then the officer began to relate what Janes had said, but defense counsel immediately objected. Portions of the ensuing bench conference are very difficult to hear, but it appears the discussion focused upon whether the proposed testimony was inadmissible hearsay. The trial court permitted the officer to finish relating Janes's statement, after which the officer testified that Janes had told him that something bad had happened that should not have happened; but Janes would only talk about it with his attorney present. The officer testified that he then stopped questioning Janes.

Shortly after that instance, the officer's testimony stopped; and the trial court called both Janes's counsel and the Commonwealth to the bench and asked Janes's counsel if he wanted the jury admonished that Janes had a right to an attorney and to remain silent and that Janes's invocation of those rights could not be used against him. Defense counsel agreed to the giving of an admonition. The trial court then admonished the jury that it could hold against Janes the statements he actually made to the officer, but the jury could not hold against Janes his invocation of his right to counsel and right to

silence. The trial court also admonished the jury that the officer acted properly by ceasing questioning Janes after he invoked his right to counsel.

Finally, during its closing argument, the Commonwealth reminded the jury that Janes had told the officer that something bad had happened, but he could not talk about it and that Janes had also told the jury that he could not remember the shootings.

The Commonwealth asserts that this issue is unpreserved because Janes did not object to the Commonwealth's statements in opening statement and closing argument, and the objection lodged during the officer's testimony was only hearsay-related.

It is uncontested that Janes lodged no contemporaneous objection to the statements at issue made during the Commonwealth's opening statement and closing argument. So the issue is certainly unpreserved as to those comments by the Commonwealth. We were unable to discern any contemporaneous statement by Janes's counsel that the testimony at issue was improper because it was a comment upon Janes's invocation of his right to silence and counsel. It appears that the issue is unpreserved for our review.[3] And portions of the bench conference immediately following the objection are inaudible. But the trial court admonished the jury not to hold against Janes his invocation of his rights to silence and counsel, which it presumably would not have done if the sole objection was based upon hearsay. We will exercise

---

[3] *See, e.g.,* <u>Charles v. Commonwealth</u>, 634 S.W.2d 407, 409 (Ky. 1982) ("The grounds for the objection are different from those asserted at the trial court and, therefore, are not properly preserved for appellate review.").

leniency by assuming, solely for the sake of argument, that this issue is preserved, at least as to the officer's testimony.

Obviously, Janes had the rights to silence and to the services of counsel.[4] But we agree with the Commonwealth that Janes did not invoke those rights until after he had already made a statement. In other words, once informed of his rights, Janes did not immediately invoke his rights to silence and to counsel. Instead, he blurted out that something bad had happened but that he would not talk about it. Only after making those comments did Janes arguably invoke his rights to silence and counsel by saying he would not speak further without an attorney.

Since the prohibition against hearsay does not prohibit the admissibility of statements of a party, such as Janes,[5] there was no prohibition on the Commonwealth's placing into evidence, by way of the officer to whom Janes made the statement, Janes's statement that something bad had happened that should not have happened. As the United States Supreme Court has recognized, "a defendant who voluntarily speaks after receiving <u>Miranda</u> warnings has not been induced to remain silent. As to the subject matter of

---

[4]  *See, e.g.,* <u>Miranda</u>, 384 U.S. at 473-74 ("Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.") (footnote omitted).

[5]  *See* Kentucky Rules of Evidence (KRE) 801A(b)(1) ("A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is . . . [t]he party's own statement . . . .").

his statements, the defendant has not remained silent at all."[6] The Commonwealth's references during opening statement and closing argument to Janes's statement about knowing something bad had happened were also permissible.

The officer's reference to Janes's possible request for an attorney may not have been absolutely impermissible. In a somewhat factually distinguishable but legally analogous case, a federal appellate court found no impropriety when an officer related the fact that a defendant gave a brief alibi but "didn't wish to say any more"; and the officer also recited the defendant's other remark that he did not "know anything about what's going on . . . . I was fishing all night, and . . . I'd like to talk to a lawyer."[7] Likewise, it is clear in Kentucky that not every reference to an accused's invocation of his right to silence or counsel is improper or reversible error.[8]

We need not address whether there was error in the officer's reference to Janes's request for an attorney and refusal to speak further because the trial court specifically admonished the jury not to hold Janes's invocation of his rights against him. Admonitions are presumed to cure these types of errors.[9] And we do not believe either of the very limited exceptions to the presumptive

---

[6] Anderson v. Charles, 447 U.S. 404, 408 (1980).

[7] Lindgren v. Lane, 925 F.2d 198, 201 (7th Cir. 1991).

[8] See, e.g., Wallen v. Commonwealth, 657 S.W.2d 232, 233 (Ky. 1983).

[9] Vincent v. Commonwealth, 281 S.W.3d 785, 790 (Ky. 2009) ("While evidence that a defendant exercised his right to remain silent should not be admitted at trial, it appears in context that the prosecution did not intentionally elicit reference to Vincent's refusal to speak to police. And the trial court offered an admonition, which presumably would have cured any error . . . .") (footnote omitted).

efficacy of admonitions applies to this case.[10]  Given the presumptively effective admonition and the overwhelming evidence arrayed against him, Janes is not entitled to relief.

### B. No Reversible Error in Lawless's Testimony About Prior Bad Acts.

KRE 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Janes argues that the Commonwealth violated this evidentiary prohibition in such a manner as to necessitate a mistrial when it elicited testimony from Lawless that she had separated from Janes at one point in their relationship because he had abused her, including having punched her in the face.  We disagree.

The testimony in question referenced a prior, uncharged bad act falling within the scope of KRE 404(b).  And the Commonwealth does not dispute Janes's contention that he did not receive pretrial notice of the Commonwealth's intent to use 404(b) material, as is required by KRE 404(c). Indeed, the Commonwealth does not even contend in its brief that the testimony at issue was proper.  We agree with Janes that Lawless's testimony

---

[10]  *See, e.g.,* Johnson v. Commonwealth, 105 S.W.3d 430, 441 (Ky. 2003) ("There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis *and* was inflammatory or highly prejudicial.") (citation and internal quotation marks omitted).

violated KRE 404(b).[11] We disagree with Janes that the error necessitated a mistrial.

The trial court sustained Janes's objection; and, as it did with the officer's testimony discussed previously, the trial court admonished the jury to disregard the answer that contained the KRE 404(b) material. "'A jury is presumed to follow an admonition to disregard evidence[,]' and an admonition is presumed sufficient to cure errors."[12] And we do not perceive this fleeting reference to a prior bad act to be the rare instance in which an admonition was insufficient to cure the error.[13]

Moreover, it is clear that this brief KRE 404(b) violation was not of sufficient magnitude to necessitate a mistrial. "A court should grant a mistrial only if it is manifestly necessary to do so" because "a mistrial is an extreme remedy" that "should be resorted to only when there is a fundamental defect in the proceedings . . . ."[14] We employ the abuse of discretion standard in reviewing a trial court's decision to deny a mistrial.[15]

---

[11] The prosecutor explained to the trial court that she had not expected Lawless to mention having been abused by Janes; rather, the prosecutor expected Lawless to refer to Janes's alleged alcohol usage as the impetus for her having previously separated from Janes. So it appears as if the KRE 404(b) violation may well have been unintentional.

[12] Parker v. Commonwealth, 291 S.W.3d 647, 658 (Ky. 2009) (*quoting* Johnson, 105 S.W.3d at 441).

[13] *Id.* (*quoting* Johnson for the narrow exceptions to the presumption of efficacy attached to trial court's admonishment to a jury).

[14] *Id.* (quotation marks omitted; ellipsis in original).

[15] *Id.*

The evidence against Janes was overwhelming, and the comment in question was brief. The trial court took a proper protective measure by admonishing the jury to disregard Lawless's improper testimony. Given all of those factors, the trial court did not abuse its discretion by refusing to declare a mistrial because the KRE 404(b) violation did not rise to the level of being a fundamental defect in Janes's trial.

## III.  CONCLUSION.

For the foregoing reasons, the judgment of the trial court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Susan Roncarti Lenz
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204